[No. 87618-5.   En Banc.]
Argued October 25, 2012.     Decided January 31, 2013.

THE STATE OF WASHINGTON, *Respondent*, v. JON A. STRINE,
*Appellant*.

*Leslie R. Weatherhead* and *Geana M. Van Dessel* (of *Witherspoon Kelley*); and *Carl J. Oreskovich, Courtney A. Garcea*, and *Daniel E. Stowe* (of *Etter McMahon Lamberson Clary & Oreskovich PC*), for appellant.

*Steven J. Tucker, Prosecuting Attorney*, and *Mark E. Lindsey* and *Mary A. Brady, Deputies*, for respondent.

¶1 FAIRHURST, J. — Jon A. Strine was charged with and tried for vehicular homicide and vehicular assault after he crashed his vehicle into a motorcycle carrying a married couple. After the trial concluded, the jury deliberated just under two days. The jury returned verdict forms finding Strine "not guilty" on both charges. Clerk's Papers (CP) at 47-48. The trial judge polled the jury, apparently on the mistaken belief that polling was required. Six jurors dissented from the original verdict, and the presiding juror stated that the jury would be unable to reach a unanimous verdict. The trial judge declared a mistrial and discharged the jury. Strine later moved to dismiss on double jeopardy grounds, but the trial court denied Strine's motion. We affirm. We hold that the double jeopardy clause does not prevent the State from reprosecuting Strine because Strine's original jeopardy never terminated.

## FACTS AND PROCEDURAL HISTORY

¶2 Strine was charged with vehicular homicide and vehicular assault after his vehicle collided with a motor-

cycle carrying Gary and Lorri Keller. Mr. Keller was severely injured, and Mrs. Keller was killed. Strine had consumed alcohol prior to driving, but it was contested at trial whether he was intoxicated at the time of the accident.

¶3 After a 14-day trial, the jury began deliberations that lasted nearly 2 days. After the jury reached a verdict and returned to the courtroom, many of the jurors were visibly upset, some weeping. The presiding juror gave the verdict forms to the trial judge. The verdict forms stated that Strine was "not guilty" on both counts. CP at 47-48. The trial judge read the verdict forms aloud. Upon hearing the "not guilty" verdicts, the daughter of the Kellers, who was sitting in the courtroom, had a "strong emotional outburst" and ran out of the courtroom. CP at 93. From the hallway outside, the daughter could be heard yelling, "He murdered my mom!" *Id.*

¶4 The trial judge stated that she was required by law to poll the jury to ensure that the verdict was unanimous. The trial judge stated her intent to ask each juror two questions: (1) whether the verdict was the juror's own verdict and (2) whether the verdict was the verdict of the entire jury. Neither the State nor Strine objected to the poll. The first two jurors polled said the verdict was theirs and the verdict of the jury; the third juror polled said that the verdict was not her own. The other jurors did not act surprised upon hearing this.

¶5 Realizing the possibility that the verdict was less than unanimous, the trial judge instructed the jury to return to the jury room and to not discuss the verdict until further instructed. After the jury left, the trial judge consulted with counsel, seeking guidance on how to proceed. Neither the trial judge nor counsel had been in this situation before. Defense counsel suggested polling the rest of the jury. The trial judge warned that once the jury was polled, she would be hesitant to let the jury continue deliberating.

¶6 The trial judge directed the jury to return to the courtroom and proceeded to poll the rest of the jury. Six

jurors agreed with the announced verdict, and six dissented. Immediately after polling the last juror, the trial judge asked the presiding juror whether a unanimous verdict could be reached if the jury were given more time to deliberate. The presiding juror stated that the jury would not be able to reach a unanimous verdict even with additional time to deliberate. The trial judge called counsel for a sidebar and stated her intent to declare a mistrial. After confirming that the State would retry the case, the trial judge asked counsel when they were available, as she wanted to hold the new trial as soon as possible. Defense counsel replied, "Judge, I don't know." Verbatim Report of Proceedings (Feb. 10, 2011) at 11.

¶7 The trial judge declared a mistrial and discharged the jury. Neither the State nor Strine objected to the mistrial at the time. Strine subsequently moved to dismiss on double jeopardy grounds. The trial judge denied Strine's motion to dismiss as well as his motion for reconsideration. Strine appealed to the Court of Appeals, Division Three, which certified the case to this court pursuant to RCW 2.06.030 and RAP 4.4.

## ISSUES

¶8 A. By not objecting to the trial judge's decision to poll the jury, did Strine fail to preserve for review his assigned errors related to the jury poll?

¶9 B. Is the State prohibited from reprosecuting Strine on double jeopardy grounds?

## ANALYSIS

A.  By not objecting to the trial judge's decision to poll the jury, did Strine fail to preserve for review his assigned errors related to the jury poll?

¶10 The State argues that defense counsel's failure to object to the trial judge's decision to poll the jury precludes

review of Strine's assignments of error related to the jury poll.[1] We agree. Generally, this court will not review any claim of error that was not raised in the trial court. RAP 2.5(a); *see also United States v. Olano*, 507 U.S. 725, 731, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993) (" 'No procedural principle is more familiar to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal . . . cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " (quoting *Yakus v. United States*, 321 U.S. 414, 444, 64 S. Ct. 660, 88 L. Ed. 834 (1944))). "This rule affords the trial court an opportunity to rule correctly upon a matter before it can be presented on appeal." *New Meadows Holding Co. v. Wash. Water Power Co.*, 102 Wn.2d 495, 498, 687 P.2d 212 (1984).

¶11 In prior cases, we reasoned that "there is great potential for abuse when a party does not object because '[a] party so situated could simply lie back, not allowing the trial court to avoid the potential prejudice, gamble on the verdict, and then seek a new trial on appeal.' " *State v. Weber*, 159 Wn.2d 252, 271-72, 149 P.3d 646 (2006) (second alteration in original) (quoting *State v. Sullivan*, 69 Wn. App. 167, 172, 847 P.2d 953 (1993)); *see also State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d 653 (2012) ("Objections are required . . . to prevent potential abuse of the appellate process."). The "theory of preservation by timely objection" also addresses several other concerns:

> [I]t serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review

---

[1] Strine states that the trial court erred in (1) "declining to file the verdicts, and instead conducting a poll because it believed the law required it in every case"; (2) "conducting a jury poll instead of filing the verdicts after an emotional outburst by decedent's daughter"; (3) "deciding to conduct a jury poll after the outburst without giving the jury limiting instructions"; (4) "failing to inquire whether dissenting jurors had been influenced in the poll responses by the outburst"; and (5) "failing to determine whether the jury was deadlocked on both counts, or one." Am. Br. of Appellant at 2-3.

by ensuring that a complete record of the issues will be available, ensures that attorneys will act in good faith by discouraging them from "riding the verdict" by purposefully refraining from objecting and saving the issue for appeal in the event of an adverse verdict, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address.

BENNETT L. GERSHMAN, TRIAL ERROR AND MISCONDUCT § 6-2(b) at 472-73 (2d ed. 2007) (footnotes omitted).

¶12 Strine argues that the trial judge's decision to poll the jury after the emotional outburst of the daughter—on the erroneous notion that the law required the judge to poll the jury—set into motion a series of events that ultimately deprived Strine of the not guilty verdict the jury originally returned. However, if Strine had objected to the poll in the first instance, the series of events he complains about might have been avoided. That is, had Strine objected to the trial judge's decision to poll the jury—i.e., by pointing out that under CrR 6.16(a)(3) the trial judge had discretion to poll the jury but was not required to poll—the trial judge would have had the opportunity to review the applicable rule and exercise the discretion that Strine argues she failed to exercise. As it stands, Strine asked the court to continue the poll and the trial judge had no opportunity to correct her alleged error.

¶13 Furthermore, the trial judge's decision to poll the jury was not a "manifest error" affecting Strine's constitutional rights that warrants review under RAP 2.5(a)(3). A defendant does not have a constitutional right to poll the jury. *See, e.g., Simpson v. State*, 3 So. 3d 1135, 1141 (Fla. 2009) ("The right of a defendant to poll the jury and the right of a juror to repudiate his or her verdict are derived from common law.").

¶14 In conclusion, we do not address Strine's assignments of error related to the trial judge's decision to poll the jury. The trial judge's decision to poll the jury was a procedural decision that did not implicate Strine's consti-

tutional right to be free from double jeopardy. This court has consistently refused to review alleged errors that were not objected to at trial, especially when an objection would have given the trial court an opportunity to correct the error.

B. Is the State prohibited from reprosecuting Strine on double jeopardy grounds?

¶15 "A double jeopardy claim may be raised for the first time on appeal." *State v. Jackman*, 156 Wn.2d 736, 746, 132 P.3d 136 (2006) (citing RAP 2.5(a)). "Double jeopardy claims raise questions of law, which we review de novo." *State v. Turner*, 169 Wn.2d 448, 454, 238 P.3d 461 (2010) (citing *State v. Kelley*, 168 Wn.2d 72, 76, 226 P.3d 773 (2010)). Above, we declined to review Strine's assignment of errors related to the trial judge's decision to poll the jury because Strine did not object to the poll. Strine also failed to object to the trial judge's declaration of mistrial and discharge of the jury. However, the declaration of mistrial and discharge of the jury implicate Strine's manifest constitutional right to be free from double jeopardy. Strine's double jeopardy claim can be raised for the first time on appeal. RAP 2.5(a); *Jackman*, 156 Wn.2d at 746.

¶16 The Fifth Amendment to the United States Constitution guarantees that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb." Washington Constitution article I, section 9 guarantees that "[n]o person shall . . . be twice put in jeopardy for the same offense." " 'The federal and state [double jeopardy] provisions afford the same protections and are identical in thought, substance, and purpose.' " *State v. Ervin*, 158 Wn.2d 746, 752, 147 P.3d 567 (2006) (alteration in original) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Davis*, 142 Wn.2d 165, 171, 12 P.3d 603 (2000)).

¶17 "These double jeopardy provisions not only protect a criminal defendant from a second prosecution for the same offense after conviction or acquittal, and from multiple punishments for the same offense, but also the 'valued

right [of the defendant] to have his trial completed by a particular tribunal.'" *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982) (alteration in original) (citation omitted) (quoting *Arizona v. Washington*, 434 U.S. 497, 503, 98 S. Ct. 824, 54 L. Ed. 2d 717 (1978)).

¶18 The double jeopardy clause applies where (1) jeopardy has previously attached, (2) jeopardy has terminated, and (3) the defendant is in jeopardy a second time for the same offense in fact and law. *Ervin*, 158 Wn.2d at 752. Where these elements have been met, the double jeopardy clause bars the State from retrying a defendant. *Id.* "Jeopardy attaches after the jury is selected and sworn." *State v. Cedillo Juarez*, 115 Wn. App. 881, 887, 64 P.3d 83 (2003) (citing *Downum v. United States*, 372 U.S. 734, 737, 83 S. Ct. 1033, 10 L. Ed. 2d 100 (1963)). "It is not necessary that argument or testimony be presented." *Id.* Here, it is undisputed that jeopardy attached and the State intends to retry Strine. So only the second element of double jeopardy—termination—is at issue.

¶19 Jeopardy may be terminated in one of three ways: (1) when the defendant is acquitted, (2) when the defendant is convicted and that conviction is final, or (3) when the court dismisses the jury without the defendant's consent and the dismissal is not in the interest of justice. *Ervin*, 158 Wn.2d at 752-53. Strine argues that he was acquitted, but he concedes that there was no final verdict entered in his favor. *See* Wash. Supreme Court oral argument, *State v. Strine*, No. 87618-5 (Oct. 25, 2012), at 10 min., 18 sec., *audio recording by* TVW, Washington State's Public Affairs Network, *available at* http://www.tvw.org. ("[U]nder the law aw we see it, the court has to receive and file the verdict for that to constitute the judgment of the court[,] which would end the proceedings. And that didn't happen."). Although the jury initially returned a verdict of not guilty and the trial court read the verdict aloud, the jury's verdict was not entered and was not final. Strine was not acquitted. *See Berlinger v. Shield*, 164 Wash. 147, 152, 2

P.2d 681 (1931) (noting that a verdict is not final when the verdict has "merely been read"). Likewise, neither Strine nor the State argues that Strine was convicted and the conviction was final. Therefore, Strine's only basis for claiming that his original jeopardy terminated is that the trial judge discharged the jury without his consent and not in the interest of justice.

¶20 "A hung jury is an unforeseeable circumstance requiring dismissal of the jury in the interest of justice." *Ervin*, 158 Wn.2d at 753 (citing *Green v. United States*, 355 U.S. 184, 188, 78 S. Ct. 221, 2 L. Ed. 2d 199 (1957)). "[I]t is universally recognized that a jury which, after a reasonable time, cannot arrive at a verdict, may be discharged and the defendant tried again." *State v. Connors*, 59 Wn.2d 879, 883, 371 P.2d 541 (1962); *see also Washington*, 434 U.S. at 509 ("without exception, the courts have held that the trial judge may discharge a genuinely deadlocked jury and require the defendant to submit to a second trial"). The disagreement between the jurors must be evident from the record. *Selvester v. United States*, 170 U.S. 262, 269, 18 S. Ct. 580, 42 L. Ed. 1029 (1898); *see also State v. Daniels*, 165 Wn.2d 627, 639, 200 P.3d 711 (2009) (Sanders, J., dissenting) (citing *Ervin* for the proposition that a hung jury requires an "express" and "formal . . . statement of disagreement by the jury on the record").

¶21 Appellate courts give "[g]reat deference" to the trial court's decision to declare a mistrial. *Jones*, 97 Wn.2d at 163; *Washington*, 434 U.S. at 510. As Justice Story noted:

We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circum-

754

stances, and for very plain and obvious causes . . . . But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office.

*United States v. Perez*, 22 U.S. (9 Wheat.) 579, 580, 6 L. Ed. 165 (1824).

¶22 In *Renico v. Lett*, the Court summarized its jurisprudence regarding the standard appellate courts should apply in reviewing a trial court's declaration of mistrial in the absence of defendant's consent:

Since *Perez*, we have clarified that the "manifest necessity" standard "cannot be interpreted literally," and that a mistrial is appropriate when there is a "high degree" of necessity. *Washington*, [434 U. S.] at 506. The decision whether to grant a mistrial is reserved to the "broad discretion" of the trial judge, a point that "has been consistently reiterated in decisions of this Court." *Illinois* v. *Somerville*, 410 U. S. 458, 462[, 93 S. Ct. 1066, 35 L. Ed. 2d 425] (1973).

In particular, "[t]he trial judge's decision to declare a mistrial when he considers the jury deadlocked is . . . accorded great deference by a reviewing court." *Washington*, 434 U. S., at 510. A "mistrial premised upon the trial judge's belief that the jury is unable to reach a verdict [has been] long considered the classic basis for a proper mistrial." *Id.*, at 509.

The reasons for "allowing the trial judge to exercise broad discretion" are "especially compelling" in cases involving a potentially deadlocked jury. [*Id.*] There, the justification for deference is that "the trial court is in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury will be able to reach a just verdict if it continues to deliberate." *Id.*, at 510, n. 28. In the absence of such deference, trial judges might otherwise "employ coercive means to break the apparent deadlock," thereby creating a "significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors." *Id.*, at 510, 509.

. . . .

We have expressly declined to require the "mechanical application" of any "rigid formula" when trial judges decide whether jury deadlock warrants a mistrial. *Wade* v. *Hunter*, 336 U. S. 684, 691[, 69 S. Ct. 834, 93 L. Ed. 974 (1949)]. We have also explicitly held that a trial judge declaring a mistrial is not required to make explicit findings of "manifest necessity" nor to "articulate on the record all the factors which informed the deliberate exercise of his discretion." *Washington*, [434 U.S.] at 517. And we have never required a trial judge, before declaring a mistrial based on jury deadlock, to force the jury to deliberate for a minimum period of time, to question the jurors individually, to consult with (or obtain the consent of) either the prosecutor or defense counsel, to issue a supplemental jury instruction, or to consider any other means of breaking the impasse. In 1981, then-Justice Rehnquist noted that this Court had never "overturned a trial court's declaration of a mistrial after a jury was unable to reach a verdict on the ground that the manifest necessity standard had not been met." *Winston* v. *Moore*, 452 U.S. 944, 947[, 101 S. Ct. 3092, 69 L. Ed. 2d 960 (1981)] (opinion dissenting from denial of certiorari).

559 U.S. 766, 774-75, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010) (some alterations in original) (some citations and internal quotation marks omitted).

¶23 In *Renico*, the defendant was charged with first degree murder and possession of a firearm during the commission of a felony. 559 U.S. at 769-70. The trial lasted nine hours, spread over six different days. *Id.* at 770. The jury deliberated for approximately half an hour on the first day of deliberations and the morning of the second day. *Id.* During that time, the jury sent the court seven different questions. *Id.* At 12:45 p.m. on the second day of deliberations, the trial judge recalled the jury to the courtroom. *Id.* The trial judge asked the presiding juror if a unanimous verdict could be reached, and the presiding juror responded, " 'No.' " *Id.* at 771. The trial judge then declared a mistrial and dismissed the jury. *Id.* Neither the prosecutor nor defense counsel objected. *Id.* The Court found that the trial

judge did not abuse his discretion in declaring a mistrial on the ground that the jury was deadlocked.

¶24 In *Jones*, we found that the trial judge abused its discretion—and terminated original jeopardy—by discharging the jury prior to delivering a verdict when the presiding juror indicated that the jury would not be able to reach a verdict within a reasonable time and the rest of the jurors agreed. 97 Wn.2d at 160. In that case, the jury deliberated from 11:00 a.m. to midnight on the day trial concluded. *Id.* at 160-61. At midnight, the trial judge called the jury into the courtroom and asked the presiding juror if there was a possibility of reaching a verdict by 1:30 a.m. *Id.* at 161. The presiding juror stated that it would not be possible to reach a verdict by 1:30 a.m. *Id.* The trial judge asked for the other jurors to raise their hands if they agreed with the presiding juror, and all the jurors raised their hands. *Id.* At that point, the trial judge declared a mistrial without consulting counsel or giving the parties a chance to object. *Id.*

¶25 This court held that the double jeopardy clause barred retrial of Jones because there were no "extraordinary and striking" circumstances that justified the trial judge's discharge of the jury. *Id.* at 165. Significantly, in *Jones*, the presiding juror did not say that the jury was deadlocked but rather that the jury would not be able to reach a verdict by 1:30 a.m. *Id.* at 166. In dictum, we stated, "Obviously, if the jury, through its foreman and of its own accord, acknowledges that it is *hopelessly deadlocked*, there would be a factual basis for discharge if the other jurors agree with the foreman." *Id.* at 164.

¶26 According great deference to the trial judge's decision to declare a mistrial, we find no reason to hold that the discharge of Strine's jury was in error or contrary to the interest of justice. Here, it is evident from the record that Strine's jury disagreed on the verdict and that a unanimous verdict could not be reached. When polled, the jury was divided six to six on the verdict. Following the polling, the presiding juror answered that a

unanimous verdict could not be reached, even with additional time to deliberate. The trial judge was justified in concluding that Strine's jury was deadlocked.

¶27 This case is similar to *Renico* where the Court found "manifest necessity" to justify a mistrial when the presiding juror stated that the jury would not be able to reach a unanimous verdict. 559 U.S. at 771. This case is distinguishable from *Jones* where we held that the trial judge abused his discretion by discharging the jury when there was no evidence of hopeless deadlock. 97 Wn.2d at 166. The trial judge is " 'in the best position to assess all the factors which must be considered in making a necessarily discretionary determination whether the jury [would] be able to reach a just verdict if it continue[d] to deliberate.' " *Renico*, 559 U.S. at 774 (quoting *Washington*, 434 U.S. at 510 n.28). We hold that Strine's original jeopardy was not terminated when the trial judge discharged the jury because there was a manifest necessity—i.e., a hung jury—to justify declaration of mistrial and discharge of the jury.

¶28 Furthermore, the proper administration of justice requires that "the defendant's valued right to have his trial completed by a particular jury may, on proper occasions, be subordinated to the public's interest in fair trials to end in just judgments." *Connors*, 59 Wn.2d at 883 (citing *Wade*, 336 U.S. 684). "[T]he proper administration of justice requires the discharge of a jury [when the] jury is unable to agree on a verdict." *Jones*, 97 Wn.2d at 163. In this case, the trial judge concluded that the jury was deadlocked—a conclusion evidenced by the record. The proper administration of justice required the trial judge to discharge the jury and order a new trial.[2]

## CONCLUSION

¶29 The double jeopardy clause does not prevent the State from reprosecuting Strine because Strine's original

---

[2] Given our decision, it is unnecessary to determine whether Strine's counsel impliedly consented to the court's declaration of mistrial.

jeopardy never terminated. Strine's jury was deadlocked, constituting a manifest necessity that justified a mistrial. Furthermore, the proper administration of justice is not offended by subjecting Strine to a second trial. The trial judge did not err in declaring a mistrial or by denying Strine's motion to dismiss on double jeopardy grounds. We affirm the trial court and remand for further proceedings consistent with this opinion.

MADSEN, C.J.; C. JOHNSON, OWENS, J.M. JOHNSON, STEPHENS, WIGGINS, and GONZÁLEZ, JJ.; and CHAMBERS, J. PRO TEM., concur.

After modification, further reconsideration denied April 10, 2013.