

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34329-4-III |
| Respondent, | ) | (cons. w/34502-5-III) |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE RAY WALDVOGEL, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |
| | ) | |
| IN RE THE MATTER OF PERSONAL | ) | |
| RESTRAINT OF | ) | |
| | ) | |
| JESSE RAY WALDVOGEL. | ) | |

FEARING, J. — Jesse Waldvogel appeals his two convictions for unlawful

possession of a firearm. For the first time on appeal, he contends that the trial court

erroneously instructed the jury by failing to separate the two counts of unlawful

possession in the to-convict instruction. Because Waldvogel fails to show manifest

constitutional error, we deny review of his assignment of error on its merits. We also

affirm the trial court's sentence.

FACTS

We relate the facts that form the prosecution of Jesse Waldvogel primarily from

the testimony of a discrete observer, Karina Al-Zayadi. On the night of May 31, 2015,

Al-Zayadi and her family slept in their ground floor residence at the Phoenix Manor

Apartments in Kennewick. At 11 p.m., the noise of a male and female arguing awakened

Al-Zayadi. The sound of screeching tires echoed through the apartment as the smell of

burnt rubber wafted through open windows. As the squealing tires continued, Al-Zayadi

telephoned law enforcement to report the disturbance.

Karina Al-Zayadi, concerned about the proximity of the screaming tires to her

children's bedroom window, peered out a window and spied a male sitting inside a

parked car with the tires spinning on the pavement. The man exited the car and twitchily

paced to and from the car. Al-Zayadi saw no female. Al-Zayadi recalled law

enforcement to provide additional information. She described the agitated man as

bearing lose, long hair and wearing dark, baggy cut-off shorts and no shirt. Al-Zayadi

recognized the man from having earlier observed him at the apartment complex

swimming pool and later identified him as Jesse Waldvogel.

Karina Al-Zayadi next heard the sound of rasping metal and viewed Jesse

Waldvogel dragging a large rolling car jack across the parking lot to the car, in which he

earlier sat. Waldvogel jacked up the car and commenced changing the tire. Al-Zayadi

witnessed a second male talk with Waldvogel. The second gentleman told Waldvogel to

"forget it" and informed Waldvogel that he intended to leave. Report of Proceedings

(RP) at 62. As the man walked away, Waldvogel yelled to him to return, but the

unidentified man refused. A defied Waldvogel responded that he would retrieve his gun

2

and "'f' . . . up" the disobedient male. RP at 63. In one smooth motion, Waldvogel lifted the trunk of the car, seized a large gun, and shifted his hands in a manner Al-Zayadi associated with moving the gun's slide. Al-Zayadi described, to law enforcement, the weapon as a rifle, which she heard make a "chick" sound. Al-Zayadi lost sight of Waldvogel as he walked from the parking lot toward the street with the weapon in his hands.

Officer Brian Zinsli arrived at the Phoenix Manor Apartments at 11:55 p.m. Officer Zinsli observed Jesse Waldvogel changing a tire on the car. Waldvogel situated the damaged tire in the backseat of the car and closed the car door. Zinsli spoke with Waldvogel and took his identification card. As the officer called dispatch to learn of Waldvogel's criminal record, Waldvogel left the area. Dispatch informed Zinsli of an arrest warrant for Waldvogel.

Officer Brian Zinsli approached the now abandoned car, whose tire Waldvogel removed, and espied a loaded shotgun in the front passenger seat pointing toward the floorboard. Officer Zinsli impounded the car and ascertained the registered owner was Stacy Waldvogel. Other officers garnered and executed a search warrant on the car and seized a loaded 12 gauge Western Field shotgun from the front passenger seat. Officers also sequestered an unloaded Remington .30-06 rifle inside a closed case in the trunk of the car. Finally, law enforcement officers took mail and paperwork for both Stacy and Jesse Waldvogel from the car's glove box.

3

PROCEDURE

The State of Washington charged Jesse Waldvogel with two counts of unlawful possession of a firearm, one charge for possession of the 12 gauge Western Field shotgun and one charge for the possession of the Remington .30-06 rifle. Jesse Waldvogel stipulated that he had been adjudicated guilty as a juvenile of a serious offense as defined in RCW 9.41.010 for purposes of the unlawful possession charges.

During trial, Karina Al-Zayadi testified she lacked familiarity with firearms. She considers any giant gun to be a rifle, which she averred explained why she reported to law enforcement that she saw a rifle. Al-Zayadi testified that light coming from covered tenant parking and flood lighting nearby the building enabled her to see and identify Jesse Waldvogel. A street light also illuminated the area near the parked car. Al-Zayadi wore glasses during her trial testimony. When asked if she wore glasses on the night of May 31, 2015, she testified that she did not. She added that she needed glasses only to see long distances of a mile. She stated that she does not typically wear glasses in her day-to-day life.

Officer Brian Zinsli testified contrary to Karina Al-Zayadi and stated little light probably illuminated the parking lot on the night of May 31. Nevertheless, responding officers entered Al-Zayadi's apartment that evening and confirmed no obstructions blocked the view of Jesse Waldvogel's parked car.

Officer Brian Zinsli testified at trial about the difference between a shotgun and a

rifle.  Officer Zinsli explained to the jury that a pump action shotgun requires the operator to pull the slide back to insert a round of ammunition in the chamber, whereas a rifle needs no slide slid.  Detective Rick Runge testified that the shotgun seized from the car has a slide.  In the presence of the jury, Runge pulled the slide and elicited the sound heard by Karina Al-Zayadi on May 31.

Jesse Waldvogel called one witness, his cousin David Rae.  Rae testified that he lived with Waldvogel and his wife in 2015 at the Phoenix Manor Apartments.  Rae described an argument with Waldvogel one night around 9 or 10 p.m.  Rae did not remember the day or month of the argument.  According to Rae, Waldvogel did not possess any firearm during their argument.  Waldvogel did not open the trunk of the car, access the passenger compartment of the car, threaten to grab a shotgun, or chase Rae.  Rae remembered Waldvogel wore a shirt during the argument.

The trial court included Jesse Waldvogel's stipulation of his juvenile adjudication in the jury instructions.  The court also instructed the jury that:

> A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count.

Clerk's Papers (CP) at 104.  The trial court delivered a single to-convict instruction, which read:

> To convict the defendant of the crime of unlawful possession of a firearm in the first degree, each of the following elements of the crime must be proven beyond a reasonable doubt:

5

(1) That on or about May 31, 2015, the defendant knowingly had a firearm in his possession or control;

(2) That the defendant had previously been convicted or adjudicated guilty as a juvenile of a serious offense; and

(3) That the possession or control of the firearm occurred in the State of Washington.

If you find from the evidence that each of these elements has been proven beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 106.

The trial court also instructed the jury:

Because this is a criminal case, each of you must agree for you to return a verdict. When all of you have so agreed, fill in the verdict forms to express your decision.

CP at 112. Verdict Form A read:

We, the jury, find the defendant JESSE WALDVOGEL
_____ [Write in "not guilty" or "guilty"] of the crime of Unlawful Possession of a Firearm in the First Degree, a Westernfield 12-gauge shotgun, as charged in Count 1.

CP at 113. Verdict Form B mirrored the first verdict form except it substituted the description of the shotgun for a "Remington 30.06 rifle, as charged in Count 2." CP at 114.

During closing arguments, the State of Washington explained that the charges entailed two distinct firearms. The State's attorney intoned:

6

There's a Verdict Form A, and that's for the shotgun in this case that was inside the car. There's a Verdict Form B. That's for the rifle that was inside the trunk.

RP at 175. Waldvogel registered no objections to the revised verdict forms or the jury instructions. The jury convicted Waldvogel on both counts of unlawful possession of a firearm.

On the day of the verdict, Jesse Waldvogel expressed a wish to proceed immediately to sentencing. But, when reviewing his criminal history, Waldvogel challenged his offender score. Waldvogel argued two juvenile convictions from Clark County should be considered the same criminal conduct and thus counted as one offense rather than two in his score. The State offered to retrieve copies of the judgment and sentence from Clark County to resolve the dispute. Waldvogel asked that the trial court ignore the dispute and proceed to sentencing anyway. The astute trial court declined while commenting that the court lacked authority to sentence without an accurate offender score.

The trial court conducted the sentencing hearing three days after the verdict. In the intervening hours, the State of Washington garnered judgments and sentences from Clark County, and both parties expressed agreement with Waldvogel's offender score. The trial court asked Waldvogel if he disagreed with an offender score of seven and Waldvogel replied "[n]o, sir." RP at 201-02. The trial court received a signed copy of Waldvogel's criminal history, with the Clark County juvenile adjudications listed as two

7

separate offenses: unlawful possession of a firearm and possession of a stolen firearm, both with the same offense date. Waldvogel declared to the court that he signed the summary of his felony criminal history and affirmed the accuracy of the summary. The trial court sentenced Jesse Waldvogel to a standard range sentence of seventy-five months' confinement.

Jesse Waldvogel appeals his convictions. In a personal restraint petition, Waldvogel contends the trial court erred in sentencing. We consolidated the appeal with the personal restraint petition.

## LAW AND ANALYSIS

On appeal, Jesse Waldvogel asks for reversal of his convictions and a new trial, and, if not reversal of the convictions, for resentencing. He assigns error to the jury instructions by arguing that the instructions did not instruct as to the elements of both crimes and the instructions denied him the right to a unanimous jury.

### Elements of Offenses

Jesse Waldvogel complains for the first time on appeal that the trial court identified and distinguished the two discrete firearms in the verdict forms but not in the to-convict jury instruction. He asserts two distinct arguments based on this assignment of error. First, the trial court erroneously instructed the jury by failing to list the elements of each crime. Second, the instructions breached his constitutional right to a unanimous verdict. Because Waldvogel raises these contentions for the first time on appeal and he

8

does not show manifest constitutional error, we do not directly address the merits of his arguments. To resolve the question of manifest constitutional error, however, we must briefly and indirectly discuss the merits.

Both the United States and Washington Constitutions require a jury be instructed on all essential elements of the crime charged. *State v. O'Donnell*, 142 Wn. App. 314, 322, 174 P.3d 1205 (2007). Although all the pertinent law need not be incorporated in one instruction, an instruction that purports to be a complete statement of the crime must contain every element of the crime charged. *State v. Mills*, 154 Wn.2d 1, 8, 109 P.3d 415 (2005); *State v. Emmanuel*, 42 Wn.2d 799, 819, 259 P.2d 845 (1953). The omission of an element of a charged crime creates manifest error affecting a constitutional right that can be considered for the first time on appeal. *State v. Mills*, 154 Wn.2d at 6; *State v. Gonzalez*, 2 Wn. App. 2d 96, 105, 408 P.3d 743 (2018). An exception to this rule may lie when the instructing court omits an element of an elevated crime from the to-convict instruction, but the jury finds the element beyond a reasonable doubt in a special verdict. *State v. Mills*, 154 Wn.2d at 10; *State v. Oster*, 147 Wn.2d 141, 146, 52 P.3d 26 (2002).

Element one of Jesse Waldvogel's to-convict instruction demanded that the jury find beyond a reasonable doubt that, on May 31, 2015, defendant Waldvogel knowingly had a firearm in his possession or control. Element three of the instruction required that the jury find beyond a reasonable doubt that possession of the firearm be within the State of Washington. The State charged Waldvogel with two counts of unlawful possession,

9

one for the possession of the 12 gauge Western Field shotgun and one for the possession

of a Remington .30-06 rifle. Waldvogel insists that the to-convict instruction must have

separately identified each firearm and discretely listed the criminal elements for

possession of each.

If the characteristics of the unlawfully possessed firearm formed an element of the

crime of unlawful possession, we would agree with Jesse Waldvogel. Nevertheless,

identifying information regarding the firearm such as make, model, or serial number are

not essential elements of the crime. *State v. Jussila*, 197 Wn. App. 908, 921, 392 P.3d

1108 (2017).

RAP 2.5(a) formalizes a fundamental principle of appellate review. The first

sentence of the rule reads:

> **Errors Raised for First Time on Review.** The appellate court
> may refuse to review any claim of error which was not raised in the trial
> court.

Good sense lies behind the requirement that arguments be first asserted at trial. The

prerequisite affords the trial court an opportunity to rule correctly on a matter before it

can be presented on appeal. *State v. Strine*, 176 Wn.2d 742, 749, 293 P.3d 1177 (2013).

There is great potential for abuse when a party does not raise an issue below because a

party so situated could simply lie back, not allowing the trial court to avoid the potential

prejudice, gamble on the verdict, and then seek a new trial on appeal. *State v. Weber*, 159

Wn.2d 252, 271-72, 149 P.3d 646 (2006); *State v. Emery*, 174 Wn.2d 741, 762, 278 P.3d

653 (2012). The theory of preservation by timely objection also addresses several other concerns. The rule serves the goal of judicial economy by enabling trial courts to correct mistakes and thereby obviate the needless expense of appellate review and further trials, facilitates appellate review by ensuring that a complete record of the issues will be available, and prevents adversarial unfairness by ensuring that the prevailing party is not deprived of victory by claimed errors that he had no opportunity to address. *State v. Strine*, 176 Wn.2d at 749-50 (2013); *State v. Scott*, 110 Wn.2d 682, 685-88, 757 P.2d 492 (1988).

Countervailing policies support allowing an argument to be raised for the first time on appeal. For this reason, RAP 2.5(a) contains a number of exceptions. RAP 2.5(a)(3) allows an appellant to raise for the first time "manifest error affecting a constitutional right," an exception upon which a criminal appellant commonly relies. Constitutional errors are treated specially under RAP 2.5(a) because they often result in serious injustice to the accused and may adversely affect public perceptions of the fairness and integrity of judicial proceedings. *State v. Scott*, 110 Wn.2d at 686-87. Prohibiting all constitutional errors from being raised for the first time on appeal would result in unjust imprisonment. 2A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 2.5 author's cmt. 6, at 218 (8th ed. 2014). On the other hand, "permitting *every possible* constitutional error to be raised for the first time on appeal undermines the trial process, generates unnecessary appeals, creates undesirable retrials and is wasteful of the limited resources

11

of prosecutors, public defenders and courts." *State v. Lynn*, 67 Wn. App. 339, 344, 835 P.2d 251 (1992).

Washington courts and even decisions internally have announced differing formulations for "manifest error." We rely on the formulation that a manifest error is one "truly of constitutional magnitude." *State v. Scott*, 110 Wn.2d at 688. The trial court listed all elements of the crime of unlawful possession of a firearm in the to-convict instruction. Jesse Waldvogel forwards no decision that holds that the instructing court must deliver a separate to-convict instruction for each of two counts for the same crime. Waldvogel advances no decision that rules that the instructing court must separately identify the guns that support each of two charges of unlawful possession of a firearm. We note that Waldvogel's verdict forms distinguished between the two firearms and the State distinguished between the two weapons during its summation. Any constitutional error was not manifest.

Unanimous Verdict

Jesse Waldvogel also asserts for the first time on appeal that, because the to-convict instruction did not list the specific firearms at issue, the jury instructions did not ensure a unanimous verdict. Waldvogel complains that the jury, based on the to-convict instruction, could only have unanimously determined Waldvogel knowingly possessed or controlled a firearm, rather than each separate firearm. As a result, Waldvogel believes the jury could have convicted him on both counts for only having possession or control

over one of the weapons. He contends the to-convict instruction failed to include pertinent language that the jury may only convict him of two separate counts of unlawful possession of a firearm in the first degree if it found he knowingly had each separate firearm in his possession or control.

Like having a properly instructed jury, the right to a unanimous verdict arises from the constitution. *State v. Holland*, 77 Wn. App. 420, 424, 891 P.2d 49 (1995). Since Jesse Waldvogel did not assert this alleged error before the trial court, we must discern whether the assignment of error represents manifest constitutional error.

Jesse Waldvogel, in his brief, assumes that the identity of each firearm forms an element of the crime. We noted before that the make, model, and serial number of the firearm does not form an element of the crime of unlawful possession of a firearm. Jesse Waldvogel cites no case that holds that one jury instruction listing the elements of the crime for two separate counts violates a constitutional right to a unanimous verdict. We note that the trial court in another instruction emphasized that the State charged Waldvogel with two counts of unlawful possession and that the jury must separately consider each count. Another instruction indicated that each verdict must be unanimous. Waldvogel shows no manifest constitutional error.

## Offender Score

In a personal restraint petition, Jesse Waldvogel attaches error to the calculation of his offender score. He contends that two earlier convictions in Clark County should be

13

treated as constituting the same criminal conduct and one crime for purposes of his offender score under RCW 9.94A.589(l)(a). He further contends that crimes committed in Adams County and Franklin County on the same day should be considered as one crime for purposes of his offender score.

The State asks that this court decline review of the challenged offender score. The State notes that the trial court asked Jesse Waldvogel if he objected to the score and Waldvogel answered in the negative. The State further emphasizes that the analysis of whether two crimes constitute the same criminal misconduct for purposes of RCW 9.94A.589(l)(a) entails a factual review and the trial court reasonably forewent the review because of Waldvogel's concession to the offender score.

We find merit and appeal to the State's contention, but address the merits of Jesse Waldvogel's contention anyway. A resolution of the merits does not harm the State and may forestall additional petitions. We also note that a defendant cannot waive a challenge to a miscalculated offender score, and waiver does not apply when the alleged sentencing error is a legal error leading to an excessive sentence. *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002). Nevertheless, waiver can be found when the alleged error involves an agreement to facts, later disputed, or when the alleged error involves a matter of trial court discretion. *In re Personal Restraint of Goodwin*, 146 Wn.2d at 874.

14

Jesse Waldvogel first argues that Clark County juvenile convictions for unlawful possession of a firearm and possession of a stolen firearm represent the same criminal conduct. Waldvogel underscores that the same gun found in his parent's house formed the subject of the respective charges. RCW 9.94A.589(1)(a) defines "same criminal conduct" as two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim. Waldvogel argues he had the same intent for both crimes that was to possess or keep possession of a firearm. Even assuming the validity of this contention, the Washington Supreme Court had held that unlawfully possessing a firearm and possessing a stolen firearm did not encompass the same criminal conduct because the respective victim of each crime differs. *State v. Haddock*, 141 Wn.2d 103, 110-11, 3 P.3d 733 (2000). The victim of unlawful possession of a firearm is the general public, while the victim of possession of a stolen firearm is the true owner of the firearm. *State v. Haddock*, 141 Wn.2d at 111. The location of the weapon does not determine the victim of the crime.

Jesse Waldvogel next argues that 2009 convictions for possession of stolen property in the second degree and theft of a motor vehicle should be scored as the same criminal conduct. While both offenses were committed on July 25, 2008, the crimes occurred in different counties. Waldvogel was convicted of the possession of stolen property charge on March 17, 2009 in Franklin County. Waldvogel was convicted of the theft of a motor vehicle charge on May 1, 2009 in Adams County. Because the crimes

15

occurred in different counties, they do not meet the definition of same criminal conduct. RCW 9.94A.589(1)(a).

## CONCLUSION

We affirm Jesse Waldvogel's convictions for two counts of unlawful possession of a firearm and his sentence based on the convictions. The State agrees to not seek costs on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____    _____
Siddoway, J.                                 Pennell, A.C.J.