IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 35705-8-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| BRADLEY DEAN ZIMMER, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, A.C.J. — Bradley Zimmer appeals his conviction for attempting to elude a police vehicle. He also challenges the court's imposition of legal financial obligations (LFOs). We affirm Mr. Zimmer's conviction, but grant partial relief as to the LFOs.

FACTS

*Offense conduct*

This case began when a Washington State Patrol trooper attempted to stop Mr. Zimmer's car for speeding. The trooper activated his emergency lights and siren, but Mr. Zimmer did not stop. Instead, he led several law enforcement officers on an 11-minute chase. During the chase, Mr. Zimmer not only continued to speed but also committed numerous traffic violations, including running red lights, improper lane changes, and driving on a sidewalk curb. The chase ended when officers deployed spike strips that deflated Mr. Zimmer's tires and forced him to stop.

Mr. Zimmer remained in his car for almost two hours while officers attempted to coax him out. It became apparent that Mr. Zimmer was going through a personal crisis, apparently due to a divorce and child custody problems. Mr. Zimmer's entire encounter with law enforcement, from the time of initial pursuit through the standoff, was captured on video by a law enforcement dashboard camera (dash cam).

*Pretrial proceedings*

The State charged Mr. Zimmer with one count of attempting to elude a pursuing police vehicle.

Mr. Zimmer was represented by two different attorneys during the pretrial and trial process. Both relationships were strained. Mr. Zimmer voiced concerns that his attorneys had not shown him a copy of the full dash cam video that documented his standoff with police. He also appeared for trial in his jail uniform against the advice of counsel. Mr. Zimmer repeatedly made clear that he was not particularly concerned with the outcome of his trial, but he wanted to say his "piece" to the jury. 1 Report of Proceedings (RP) (Nov. 13, 2017) at 7-8.

Prior to trial, Mr. Zimmer's attorney moved in limine to exclude the portion of the tape showing Mr. Zimmer's post-chase standoff with police. According to defense counsel, that portion of the video was not relevant to the State's case and was unduly

prejudicial to Mr. Zimmer. The State agreed, and the court granted the defense's motion. When Mr. Zimmer protested because he had not seen the entire dash cam video, the court responded that viewing the full video was unnecessary because the standoff portion would not be entered into evidence.

*Trial proceedings*

At trial, the State's only witness was the Washington State Patrol trooper who had initiated the pursuit of Mr. Zimmer. The trooper recounted the chase's details to the jury. He informed the jury about the chase's duration, route, speed, and the number of moving violations committed by Mr. Zimmer. The trooper also explained that a dash cam had recorded the chase in its entirety and he authenticated a copy of the video recording. The State admitted the copy into evidence and played the first 12 minutes for the jury.

Defense counsel did not cross-examine the trooper, nor did defense counsel give an opening statement.

Mr. Zimmer testified in his own defense. He explained that he did not fully recall what had happened the night of his arrest. While he did admit to realizing he was being pursued by the police toward the end of the chase, Mr. Zimmer testified that he did not remember where he was going or how he was driving. He denied that he was attempting to run from the police. But he admitted that the video shows him attempting to elude

officers.  He explained that he suffers from a mental illness that affects his memory.

Mr. Zimmer attempted to tell the jury that, at the time of the chase, his child had recently

died and his long-term marriage had ended, causing him to suffer mental distress.  The

State thwarted that effort by successfully objecting on the basis of relevance.

Following the presentation of the evidence, defense counsel moved for an

instruction on the lesser-included offense of failure to obey a police officer.  The court

granted the motion.  Defense counsel's closing argument focused on the lesser-included

offense of failure to obey: "I ask that you find him not guilty of the crime of attempting to

elude and not guilty of the lesser included.  But if it's going to be one or the other, ask

[sic] for the lesser included of failure to obey an officer." 1 RP (Nov. 13, 2017) at 146.

The jury returned a guilty verdict on the charge of attempting to elude.  Defense

counsel requested a jury poll.  The court conducted the poll by asking each juror whether

the verdict read in court was the juror's individual verdict and the verdict of the jury.

During the poll, the court did not request or receive a response from juror 6.  Neither

the parties nor the court commented on this omission.

The court sentenced Mr. Zimmer to 60 days in jail, with 60 days' credit for time

served.  It also imposed a $500 victim assessment fee, a $200 criminal filing fee, and a

$100 deoxyribonucleic acid (DNA) collection fee.

No. 35705-8-III
*State v. Zimmer*


Mr. Zimmer moved for and was granted an order allowing an appeal at public expense based on his indigence. He now brings this timely appeal.

ANALYSIS

*Jury poll*

A defendant has a constitutional right to a verdict rendered by a unanimous jury. *State v. Petrich*, 101 Wn.2d 566, 569, 683 P.2d 173 (1984), *overruled on other grounds by State v. Kitchen*, 110 Wn.2d 403, 406 n.1, 756 P.2d 105 (1988). After a verdict has been returned, but not yet recorded, doubts about jury unanimity can be addressed by requesting a jury poll under CrR 6.16(a)(3). A jury poll allows the trial court to determine whether "the verdict signed by the [presiding juror] is that of the individual jurors and not one that has been coerced or caused by mistake." *State v. Pockert*, 49 Wn. App. 859, 860, 746 P.2d 839 (1987). Because jury unanimity is of great importance, yet difficult to test, a court's failure to conduct a poll upon request requires reversal on appeal. *Id*. at 861-62. Nevertheless, there is no constitutional right to a jury poll. *State v. Strine*, 176 Wn.2d 742, 750, 293 P.3d 1177 (2013). A jury poll merely constitutes a method of assessing the constitutional right to jury unanimity. It is not a constitutional right in and of itself.

In Mr. Zimmer's case, the trial court conducted a jury poll after receiving a request from the defense. The record indicates that, during the poll, the trial court failed to make

5

inquiry of juror 6. There is no suggestion this juror was deliberately excluded from the poll. Nor is there any indication that juror 6 was trying to avoid the court's inquiry. Instead, the failure to include juror 6 in the jury poll appears to have been an oversight. The oversight was apparently so subtle that no one in the courtroom voiced an objection or otherwise brought it to the attention of the trial court.

Because the right to a jury poll is not constitutional, unpreserved errors in the polling process are subject to waiver under RAP 2.5(a). Just as the failure to request a poll waives the issue of polling on appeal, so too does the failure to object to the trial court's polling method. Had Mr. Zimmer voiced an objection during the polling process, the trial court could have easily remedied its error and included juror 6 in the polling process. Given this circumstance, we will not excuse the failure to preserve an objection to the court's polling process by providing a remedy to the trial court's nonconstitutional error on appeal. *See Strine*, 176 Wn.2d at 750-51 (The failure to object to an easily-remedied polling error waives appellate review.).

*Conduct of counsel at trial*

Citing *McCoy v. Louisiana*, ___ U.S. ___, 138 S. Ct. 1500, 200 L. Ed. 2d 821 (2018), Mr. Zimmer claims that various errors by trial counsel require reversal of his conviction, regardless of prejudice. In *McCoy*, the United States Supreme Court held

that when trial counsel usurps control of an issue that is within a defendant's "sole

prerogative," structural error applies and the defendant's conviction must be reversed,

regardless of whether trial counsel's behavior was unreasonable or caused prejudice, as

contemplated by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d

674 (1984). 138 S. Ct. at 1511. At issue in *McCoy* was defense counsel's decision to

admit guilt during the guilt phase of a death penalty prosecution over the defendant's

"express objection." *Id.* The Supreme Court held that counsel's decision usurped the

defendant's core rights and required reversal regardless of prejudice or the reasonableness

of counsel's approach. *Id.* at 1511-12.

     *McCoy* did not change the general rule that "[t]rial management is the lawyer's

province." *Id.* at 1508. Trial counsel decides "'what arguments to pursue, what

evidentiary objections to raise, and what agreements to conclude regarding the admission

of evidence.'" *Id*. (quoting *Gonzalez v. United States*, 553 U.S. 242, 248, 128 S. Ct.

1765, 170 L. Ed. 2d 616 (2008)). But a client retains the personal right to decide

"whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal."

*Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). In

addition, *McCoy* clarified that a client also has the personal right "to decide that the

objective of the defense is to assert innocence." 138 S. Ct. at 1508.

7

Mr. Zimmer fails to identify any personal rights that were usurped by his trial counsel. He went to trial before a jury. He exercised his right to testify on his own behalf. He has taken an appeal. And his attorney never conceded guilt over Mr. Zimmer's express objection. Given these circumstances, there was no violation of Mr. Zimmer's right to autonomy over fundamental trial decisions. *See Florida v. Nixon*, 543 U.S. 175, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004).

Mr. Zimmer's complaint is that his attorney failed to present evidence and follow instructions regarding a mental health defense and that, during Mr. Zimmer's testimony, his attorney answered "No" when Mr. Zimmer asked if he could "speak freely." 1 RP (Nov. 13, 2017) at 104. These criticisms go to trial tactics, not the fundamental decisions reserved for client autonomy. It is the lawyer's prerogative to decide which legal arguments to pursue in support of a client's claim of innocence. *See Jones*, 463 U.S. at 752-53. Furthermore, given that a defendant "does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence," *Taylor v. Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 98 L. Ed. 2d 798 (1988), it was not inappropriate for Mr. Zimmer's lawyer to inform him that his right to testify did not include complete discretion to "speak freely" to the jury.

8

Because the criticisms raised in this case do not go to the fundamental decisions reserved solely for a defendant, we review Mr. Zimmer's arguments under the familiar standard for ineffective assistance of counsel set by *Strickland*. Under this standard, Mr. Zimmer must show that both his attorney's performance was deficient and the deficiency resulted in prejudice. *Strickland*, 466 U.S. at 687, 691. Failure to satisfy either prong of the *Strickland* test bars relief on appeal. *Id*. at 687.

As previously noted, Mr. Zimmer claims his attorney performed deficiently by failing to both elicit evidence of his mental state and request a jury instruction pertinent thereto. We find no deficiency.

Defense counsel's decision to limit inquiry into Mr. Zimmer's mindset was an appropriate legal decision. The eluding statute, RCW 46.61.024(1), requires the State to prove a defendant acted with knowledge of a law enforcement signal to stop. *State v. Flora*, 160 Wn. App. 549, 552-53, 249 P.3d 188 (2011). As recognized by the trial court, details about Mr. Zimmer's personal struggles were not relevant to rebutting the State's proof. Defense counsel cannot be faulted for declining to pursue a theory of the case that lacks an adequate legal basis. *See* RPC 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous.").

9

The only way Mr. Zimmer's mental distress could have been relevant would be if he had pursued a diminished capacity defense. *See State v. Thomas*, 109 Wn.2d 222, 743 P.2d 816 (1987) (implicitly recognizing diminished capacity as an affirmative defense to eluding). However, this defense would require evidence that Mr. Zimmer suffered from a mental disease or defect that affected his ability to act willfully. *State v. Stumpf*, 64 Wn. App. 522, 524-26, 827 P.2d 294 (1992). Because no such evidence is in the record, we cannot fault defense counsel for failing to pursue a diminished capacity defense.

Mr. Zimmer claims his attorney should have pursued a statutory affirmative defense under RCW 46.61.024(2), which provides that a defendant is not guilty of eluding if "(a) [a] reasonable person would not believe the signal to stop was given by a police officer; and (b) driving after the signal to stop was reasonable under the circumstances." Here, there was no evidence supporting either element of the affirmative defense. The officer who stopped Mr. Zimmer was in a marked patrol car. And Mr. Zimmer avoided the officer by driving in a manner that violated basic rules of the road. Under the facts of the case, there would have been no basis for the trial court to permit an instruction on the statutory affirmative defense. Mr. Zimmer's attorney did not behave deficiently by failing to pursue a futile act. *Flora*, 160 Wn. App. at 556.

Finally, Mr. Zimmer complains his attorney failed to share with him portions of the dash cam video, documenting his standoff with police. Here, Mr. Zimmer fails to show prejudice. Because Mr. Zimmer's mental distress was not relevant to rebutting the State's proof of eluding, it is unclear how the dash cam video could have been helpful. Even if Mr. Zimmer's attorney should have reviewed the video with him, there is no indication that doing so would have altered the outcome of the case.

## ATTORNEY FEES/COSTS

Citing *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), Mr. Zimmer argues the trial court erred in imposing a $200 criminal filing fee and $100 DNA collection fee at sentencing. *Ramirez* was decided after Mr. Zimmer filed his opening brief. The decision held that the 2018 amendments[1] to Washington's LFO scheme apply prospectively to cases on direct appellate review at the time of enactment. *Ramirez*, 191 Wn.2d at 747. The 2018 amendments prohibit imposition of a $200 criminal filing fee on defendants who are "indigent" at the time of sentencing as that term is defined by RCW 10.101.010(3)(a)-(c). RCW 36.18.020(2)(h). Also prohibited is the assessment of a DNA database fee if the State has previously collected the defendant's DNA as a result of a prior conviction. RCW 43.43.7541.

---

[1] LAWS OF 2018, ch. 269.

11

The record supports Mr. Zimmer's claim for relief from the $200 criminal filing fee. At sentencing, it was uncontested that Mr. Zimmer had not been employed since 2015. Accordingly, he met the definition of indigence set forth by RCW 10.101.010(3)(c). Under the terms of the current LFO statutes, the $200 criminal filing fee must be struck.

Our assessment of the $100 DNA collection fee yields a different result. The record indicates the current offense is Mr. Zimmer's first conviction. Thus, the 2018 LFO amendments do not relieve Mr. Zimmer from liability for the DNA fee. Nor can Mr. Zimmer escape liability under RCW 9.94A.777. That statute enables the trial court to waive all LFOs, other than restitution or a victim penalty, based on inability to pay when "the defendant has been diagnosed with a mental disorder that prevents the defendant from participating in gainful employment, as evidenced by a determination of mental disability as the basis for the defendant's enrollment in a public assistance program, a record of involuntary hospitalization, or by competent expert evaluation." RCW 9.94A.777(2). Although Mr. Zimmer has been unemployed for several years, there is no evidence in the record that his lack of employment was due to a mental disorder.

No. 35705-8-III
*State v. Zimmer*

CONCLUSION

The judgment of conviction is affirmed.  This matter is remanded with instructions

to strike Mr. Zimmer's $200 criminal filing fee from the judgment and sentence.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, A.C.J.
Pennell, A.C.J.

WE CONCUR:

_____        _____
Siddoway, J.                     Fearing, J.

13