[No. 48015–0. En Banc. March 4, 1982.]

THE STATE OF WASHINGTON, *Respondent*, v. CHARLES BOYLA JONES, *Appellant.*

*Lawrence W. Moore*, for appellant.

*Don Herron, Prosecuting Attorney, Joseph D. Mladinov,*

*Senior Deputy,* and *Michael Johnson, Deputy,* for respondent.

PEARSON, J.—Defendant, Charles Boyla Jones, appeals a conviction of second degree rape. His first trial in September 1980 was declared a mistrial after the judge determined that the jury could not agree on a verdict. After a second trial in November 1980, defendant was convicted. The issue is whether the trial court prematurely discharged the jury before ascertaining that it was genuinely deadlocked, and if so whether defendant's second trial violated his rights under constitutional proscriptions of double jeopardy. For the reasons stated below, we hold that the judge in the first trial did not have sufficient grounds on which to exercise his discretion to discharge the jury. Therefore, defendant's second trial did violate both the state (Const. art. 1, § 9) and the federal (Fifth Amendment) constitutional proscriptions of double jeopardy. Defendant's conviction is reversed.

Although the record on appeal is not complete, lacking jury instructions from the first trial and various other clerk's papers, the parties do not dispute the following essential facts. Commencing on September 15, 1980, in the Pierce County Superior Court, defendant was tried on an information charging first degree rape. The jury was instructed only on first degree rape and at 11:10 a.m. on September 18 retired to begin deliberations. At 10:35 p.m., the judge called the jurors back into the courtroom and told them:

> It is customary in this situation for the Court to inquire if there's any possibility of the jury reaching an agreement with [*sic*] a reasonable time, say, by twelve o'clock midnight. The Court will, therefore, submit this question to the foreman with the instruction that the answer be either yes, no, or that there is a possibility. Do not disclose any other information nor indicate the status of your deliberations. Mr. Foreman, is there such a possibility?

The foreman responded, "Well, there is a possibility." The

jury thereupon returned to the jury room for further deliberations. At midnight, the jury was recalled into the courtroom. The court once again asked the foreman "if there's any possibility of the jury reaching an agreement within a reasonable time, that is, by 1:30." The foreman indicated there was no such possibility. The judge then asked the jury for a show of hands of all those who agreed with the foreman. All the jurors raised their hands in agreement. The judge then declared a mistrial on the ground "that the jury as a whole feels there is no possibility of arriving at a verdict within a reasonable time." The record demonstrates that the court declared the mistrial immediately after the question was answered by the foreman, without seeking the opinions of either counsel. Neither party was given the opportunity to object or consent to the mistrial.

Defendant's motion for dismissal based upon double jeopardy was denied and he was retried on the original information before another judge on November 3, 1980. Because the complaining witness died after the first trial, her testimony from that trial was read to the jury over defendant's objection. The jury was instructed on first, second, and third degree rape, and found defendant not guilty of first degree rape, but guilty of second degree rape. Defendant appealed, and this court accepted certification of the appeal from the Court of Appeals.

Defendant raised a number of issues. These include whether the double jeopardy clause of the Fifth Amendment prohibits charges of lesser second and third degrees of rape being put before a jury in a retrial, following a mistrial in which the jury, which had been instructed only on first degree rape, was unable to reach a verdict. Several other issues relate to the correctness of various rulings by the judge in the second trial as to the admissibility of evidence, including the ruling which allowed the testimony of the chief prosecuting witness at the first trial to be read to the jury. The only issue necessary for us to reach, however, is this: Did the trial judge abuse his discretion in declaring a mistrial at midnight, after the jury indicated there was no

possibility of its reaching a verdict before 1:30 a.m.?

We begin our analysis of this issue with the state and federal constitutional proscriptions against double jeopardy. These double jeopardy provisions not only protect a criminal defendant from a second prosecution for the same offense after conviction or acquittal, and from multiple punishments for the same offense, *Illinois v. Vitale,* 447 U.S. 410, 415, 65 L. Ed. 2d 228, 100 S. Ct. 2260 (1980), but also the "valued right [of the defendant] to have his trial completed by a particular tribunal." *Arizona v. Washington,* 434 U.S. 497, 503 n.11, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978). To protect this latter "valued right," jeopardy has been held to attach before the conclusion of a trial with conviction or acquittal of the defendant. *Id.* This court has said that jeopardy attaches after the jury is impaneled and sworn, and the first witness has been asked and has answered the first question. *State v. Morlock,* 87 Wn.2d 767, 770, 557 P.2d 1315 (1976). Thus, a defendant is protected from a second prosecution for the same offense not only after acquittal or conviction, but also after his trial is terminated by a mistrial being declared at any point after the first witness has answered the first question. There are good reasons for this protection. A second prosecution following a discontinued trial prolongs the ordeal of the accused by adding to the financial and emotional burden he must shoulder while his guilt or innocence is determined. Moreover, exposure to a second tribunal may even increase the chances of an innocent defendant's being convicted. *Arizona v. Washington, supra.*

However, this prohibition of retrials following a mistrial declared over the defendant's objection is not absolute.

> [W]here . . . a jury has been impaneled and sworn to try the cause, the defendant has the right to have his case determined by that jury; and a discharge of that jury, without his consent, has the same *affect* as an acquittal, *unless such discharge was necessary in the interest of the proper administration of public justice.*

(Footnote omitted. Italics ours.) *State v. Connors,* 59

Wn.2d 879, 883, 371 P.2d 541 (1962). The discharge of the jury in the present case, therefore, will have the same effect as an acquittal, that is, it will bar a retrial unless it can be shown that the discharge was necessary in the interest of the proper administration of justice. One situation where the proper administration of justice requires the discharge of a jury is where that jury is unable to agree on a verdict. *See* RCW 4.44.330; CrR 6.10. *See generally ABA Standards Relating to Trial by Jury* § 5.4(c), Commentary at 156–58 (Approved Draft, 1968). This court in *Connors* made these observations on the necessity of discharging a hung jury:

> [I]t is universally recognized that a jury which, after a reasonable time, cannot arrive at a verdict, may be discharged and the defendant tried again. Even so, a too quick discharge of a hung jury would be held a violation of the defendant's right to a verdict of that jury . . .

*State v. Connors,* 59 Wn.2d at 883. It is well established that a trial judge should be allowed broad discretion in deciding whether the circumstances justify a discharge of the jury. *Arizona v. Washington, supra* at 509; *State v. Brunn,* 22 Wn.2d 120, 145, 154 P.2d 826, 157 A.L.R. 1049 (1945). The test has been well stated by the Court of Appeals as follows:

> Is there the presence of extraordinary and striking circumstances which clearly indicate to a court in the reasonable exercise of its discretion that the ends of substantial justice cannot be obtained without discontinuing the trial[?]

*State v. Bishop,* 6 Wn. App. 146, 150, 491 P.2d 1359 (1971), *review denied,* 80 Wn.2d 1006 (1972). Great deference should be accorded by a reviewing court to a trial judge's decision to declare a mistrial when he considers the jury deadlocked.

> On the one hand, if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his "valued right to have his trial completed by a particular tribunal." But if he fails to discharge a jury which is unable to reach a verdict

after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors.

*Arizona v. Washington, supra* at 509.

Nevertheless, there must be a factual basis for the exercise of the discretion to discharge a jury; "extraordinary and striking circumstances" must exist before the judge's discretion can come into play. Obviously, if the jury, through its foreman and of its own accord, acknowledges that it is hopelessly deadlocked, there would be a factual basis for discharge if the other jurors agree with the foreman. The jury's acknowledgment of hopeless deadlock is an "extraordinary and striking" circumstance which would justify the judge's exercise of his discretion to discharge the jury. In exercising that discretion, the judge should consider the length of time the jury had been deliberating in light of the length of the trial and the volume and complexity of the evidence. *State v. Boogaard,* 90 Wn.2d 733, 739, 585 P.2d 789 (1978).

The judge is not limited to these considerations. This court has held that he may make certain limited inquiries of the jury as to the progress of the deliberations. *Id.* After ascertaining how the jury stands numerically (but not with respect to guilt or innocence), the judge may be better able to determine whether further deliberations might resolve the deadlock. But in conducting such inquiries of the jury, the judge must always be scrupulous to avoid questions which might tend to influence a juror's decision. The right to a fair and impartial jury trial demands that a judge not bring coercive pressure to bear upon the deliberations of a jury. *State v. Boogaard, supra* at 736–37. This court held in *Boogaard* that there was improper judicial influence where the judge inquired of each juror whether or not he believed a verdict could be reached within 30 minutes. In that case, a verdict was reached after two jurors capitulated within the prescribed half hour and joined the majority's verdict. Therefore, the trial judge, in determining whether to exer-

cise his discretion, must use great care when he questions the jurors about the status of their deliberations, so that his questioning does not constitute an impermissible coercion to reach a verdict.

This, then, is the setting in which the discretion to declare a mistrial operates. After considering the length and difficulty of the deliberations, and making such limited inquiries of the jury as do not amount to impermissible coercion, the judge must then determine whether to exercise his discretion to discharge the jury. It is this determination, weighing the relevant considerations, which is subject to great deference from a reviewing court and which will not lightly be upset.

However, before that discretion may be exercised, the judge must have extraordinary and striking circumstances before him. In the present case, there were no such extraordinary and striking circumstances. The jurors had not indicated in any way that they were having problems in their deliberations before the judge called them into the courtroom. Neither had the jurors' deliberations reached extraordinary and striking lengths. The trial had lasted almost 4 days. The primary factual issue centered around whether sexual intercourse was forced upon the prosecuting witness or was with her consent. There was much circumstantial evidence to support each version of the event; the issue was not one which could be readily resolved. Moreover, there was a substantial issue of whether the State had established a felonious entry into the victim's home—an element of first degree rape in this case. RCW 9A.44.040. Bearing this in mind, the fact that the jury had been deliberating from 11:10 a.m. until 10:35 p.m., presumably with breaks for meals, is hardly extraordinary and striking. The lateness of the hour may well have justified the judge's inquiring of the jury whether they wished to recess for the evening and resume their deliberations after the benefit of a night's rest. It did not justify the judge's setting in motion the chain of events which ultimately led to his declaring a mistrial.

The judge twice inquired of the jury whether a verdict would be possible within 90 minutes. These inquiries come perilously close to offending the holding in *State v. Boogaard,* and may well have justified a new trial, had the jury decided to convict the defendant. However, in this case where the jury reached no verdict, the inquiries were inappropriate for another reason; they were insufficient to establish that the jury was genuinely deadlocked. All the trial judge ascertained before discharging the jury was that a verdict was not possible before 1:30 a.m. He did not explore any alternative to discharging the jury. He did not question the foreman or the jury as to whether a verdict would be possible if they deliberated longer than 90 minutes. Of more significance, considering the lateness of the hour, is the fact that he did not explore the possibility of the jurors' resuming their deliberations the following morning. In other words, the judge did not establish that the jury considered itself genuinely deadlocked, but only that, in the middle of the night, it could not reach a verdict within 90 minutes.

Accordingly, we conclude that the trial judge did not have sufficient grounds on which to exercise his discretion to discharge the jury. Therefore, the mistrial was improperly declared, and retrial was prohibited by the double jeopardy clause of the state and federal constitutions. Defendant's conviction is reversed.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.