[No. 53584–1. En Banc. November 19, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. STEVEN M. TAYLOR, *Petitioner.*

*Jacob Cohen* and *Mark D. Theune* (of *Cohen, Manni & Theune*), for petitioner.

*David F. Thiele, Prosecuting Attorney,* and *William H. Hawkins, Deputy,* for respondent.

PEARSON, C.J.—This case raises the issue of when a trial judge may reject a partial verdict and order the jury to resume its deliberations. Petitioner Steven M. Taylor was charged with "Attempting To Elude a Pursuing Police Vehicle", or felony flight. The jury initially returned a verdict of not guilty, based on its inability to come to a unanimous decision; the jury at the same time returned a verdict of guilty on two lesser included offenses. The trial judge rejected the three verdicts and instructed the jury to continue to deliberate on the felony flight charge. The jury subsequently delivered a guilty verdict of felony flight, which the court accepted. Petitioner appealed, arguing the trial court erred in rejecting the initial not guilty verdict. The Court of Appeals upheld the conviction, and we affirm.

I

Petitioner was arrested following a car chase with the police, and he was charged with felony flight in violation of RCW 46.61.024. At petitioner's request, the jury was instructed on two misdemeanor lesser included offenses, negligent driving and failure to stop. *See* RCW 46.61.525; RCW 46.61.022. The gist of petitioner's defense was that he was guilty of the two lesser included offenses but he did not have the mental state required for a felony flight conviction.

The trial lasted 2 days. Four law enforcement officers, petitioner, and his father each testified. Evidence included a street map illustrating the route petitioner's vehicle and the pursuing police vehicle had taken, tapes of the police vehicle's radio transmissions during the chase, and a video-tape of the route. A large portion of the evidence centered on the speeds petitioner was driving, particularly at specific intersections and curves in the road. Petitioner attempted to prove that his driving, while "likely to endanger . . . persons or property", *see* RCW 46.61.525, did not rise to the level of "a wanton or wilful disregard" for people's lives or property, as required by the felony flight charge, *see* RCW 46.61.024.

The jury initially deliberated for about 2 hours, after which time it notified the trial court it had reached a verdict. The verdict form read:

> We . . . find the defendant . . . not guilty of [felony flight] . . . and find the defendant guilty of the lesser included crime of negligent driving and . . . of the lesser included crime of failure to stop.

The court then had the clerk poll the jury as to whether the verdict was the verdict of the jury as a whole and whether the verdict was the personal verdict of each individual juror. The fourth and fifth jurors polled indicated that although the verdict was that of the jury as a whole, it was not the personal verdict of those two jurors. At this point the trial judge interrupted the polling and had the following exchange with the foreman, Mr. Miller, and with the

prosecutor, Mr. Jamieson:

THE COURT: The Rules require that the verdict of a jury in a criminal case be unanimous. That's the reason for having the polling, so that—It appears from the way we've gone so far, the verdict so far is not unanimous. Let me ask the foreman. Do you feel there is a reasonable chance that the jury can reach a unanimous verdict?

MR. MILLER: No, not on the greater charge.

THE COURT: You don't feel with additional time the jury would ever be able to reach a unanimous verdict? Is that what you're saying?

MR. MILLER: On the lesser charge, yes, but on the greater charge, no.

THE COURT: Mr. Jamieson, what, what is your feeling about this?

MR. JAMIESON: Well, since the trial took about two and a half days and they've been deliberating, I don't know how long they went out to lunch, but for perhaps two hours, I believe the jury should be given another opportunity to deliberate further to see if they can reach a unanimous decision.

MR. MILLER: Your Honor, could I clarify that?

THE COURT: Yes, mm–hmm.

MR. MILLER: We're unanimous on the guilty on the lesser charge. We're not unanimous on the greater charge. There were several of us who felt he was guilty of the greater charge. . . .

Following this exchange the judge instructed the jury to resume deliberations on the felony flight charge. The jury returned about 2 hours later. The court asked the foreman if there was "a reasonable probability" the jury could reach a verdict on the charged offense, and the foreman answered, "There is a possibility." The jury again resumed deliberations and in less than an hour returned a verdict of guilty of felony flight.

## II

Petitioner contends that Washington law permits a jury to render a verdict on a lesser included offense when it cannot reach unanimity on the greater offense. The trial court thus should have accepted the initial verdicts and not ordered the jury to deliberate further. In support of his

contention petitioner cites RCW 9A.04.100(2), which states:

> When a crime has been proven against a person, and there exists a reasonable doubt as to which of two or more degrees he is guilty, he shall be convicted only of the lowest degree.

*See also* WPIC 155.00; *State v. Krup*, 36 Wn. App. 454, 462, 676 P.2d 507, *review denied*, 101 Wn.2d 1008 (1984); *State v. Watkins*, 31 Wn. App. 485, 643 P.2d 465 (1982), *aff'd on other grounds*, 99 Wn.2d 166, 660 P.2d 1117 (1983).

▪ Whatever the merits of this contention, petitioner misperceives the issue in his case. The issue here is whether jury deliberations had been completed at the time of the first verdict. If the jury was not deadlocked but was still in the process of reaching unanimity on the greater offense, and if ultimately no reasonable doubt did exist, then RCW 9A.04.100(2) would not apply. In other words, before this court may address the question of the proper procedure when a jury is unable to agree on a greater offense— whether in such situations the trial judge should declare a mistrial or whether the judge should instead instruct the jury to deliberate on the lesser included offense—we must first conclude a genuine deadlock existed. Thus, we begin with the issue of whether the jury here was unable to agree.

A trial judge has broad discretion in deciding a jury is permanently divided. *State v. Jones*, 97 Wn.2d 159, 163, 641 P.2d 708 (1982); *see also Arizona v. Washington*, 434 U.S. 497, 510, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978). The reason for vesting the trial judge with broad discretion is that he or she is in the best position to determine whether a jury's stalemate is only a temporary step in the deliberation process or the unalterable conclusion to that process. The trial judge has sat, along with the jury, and observed the presentation of the evidence; he or she has firsthand knowledge of the complexity of the case. This personal knowledge is important, for a judge's determination that unanimity is or is not possible has serious consequences affecting both the public and the defendant. Once a deadlock is found to exist, the judge declares a mistrial and dis-

misses the jury. The State is then empowered to retry the case. If a case is prematurely dismissed when a conviction would have been forthcoming, the public's interest in the efficacious administration of justice is undermined, for the State is put to unnecessary expense, time, and effort in retrying the case. The public interest also suffers when a dismissal is long overdue and the jurors return an acquittal from frustration with the judge's refusal to terminate the deliberations. At the same time, from the defendant's point of view,

> "if [the trial judge] discharges the jury when further deliberations may produce a fair verdict, the defendant is deprived of his 'valued right to have his trial completed by a particular tribunal.' But if he fails to discharge a jury which is unable to reach a verdict after protracted and exhausting deliberations, there exists a significant risk that a verdict may result from pressures inherent in the situation rather than the considered judgment of all the jurors."

*Jones,* 97 Wn.2d at 163–64 (quoting *Arizona v. Washington, supra*). Thus, we review the trial court's determination of whether a deadlock exists with great deference. *Jones,* at 163.

The principal factor to be considered in assessing whether a nonunanimous jury is genuinely deadlocked is "the length of time the jury had been deliberating in light of the length of the trial and the volume and complexity of the evidence." *Jones,* at 164; *State v. Boogaard,* 90 Wn.2d 733, 739, 585 P.2d 789 (1978). The judge also may consider any progress in the deliberations. *Jones,* at 164. The jury's own assessment that it is deadlocked, while helpful, is not itself sufficient ground for declaring a mistrial. *See United States v. Ross,* 626 F.2d 77, 81 (9th Cir. 1980). The decision to discharge the jury should be made only when it "appears to the trial judge that there is no reasonable probability of the jury arriving at an agreement even if given more time." *State ex rel. Charles v. Bellingham Mun. Court,* 26 Wn. App. 144, 148, 612 P.2d 427 (1980).

The trial in this case lasted about 2 days. Both sides

sought to establish the key issue—petitioner's state of mind—through proof of the speeds petitioner drove, particularly at specific intersections and curves in the road. The jury listened to tapes of radio transmissions occurring during the chase and viewed a map and a video of the route taken. The jury initially deliberated for only 2 hours. Admittedly, the foreman believed that agreement on the felony flight charge was unlikely, although the other jurors were not polled on this question. However, we recognize that the trial judge, with his general courtroom experience, was better able to assess whether the complexity of the evidence might require further discussion to produce unanimity. In light of the short period of time the jury considered the felony flight charge, we cannot say that the court abused its discretion when it decided there was a reasonable probability the jury could reach agreement. Thus, instructing the jury to resume deliberations on the felony flight charge was not improper.

## III

Petitioner appears to argue that the fact that the jury did reach verdicts on the lesser included offenses should somehow preclude its further consideration of the greater offense, even in the absence of a deadlock on the greater offense. However, petitioner has offered no authority, and we have located none, for the proposition that a court must accept a jury's verdict on a lesser included offense while deliberations on the principal charge are still in progress. To the contrary, a number of jurisdictions hold that a jury *is prohibited* from delivering a verdict on a lesser included offense until it has reached unanimity on the greater. *E.g., Dresnek v. State,* 718 P.2d 156, 157 (Alaska), *cert. denied, Spierings v. Alaska,* 107 S. Ct. 679 (1986); *Stone v. Superior Court,* 31 Cal. 3d 503, 646 P.2d 809, 183 Cal. Rptr. 647 (1982); *State v. Castrillo,* 90 N.M. 608, 566 P.2d 1146 (1977); *People v. Boettcher,* 69 N.Y.2d 174, 505 N.E.2d 594, 513 N.Y.S.2d 83 (1987); *see also* cases cited in *People v. Zwiers,* __ Cal. App. 3d __, 237 Cal. Rptr. 123, 127 n.3

(1987), *review denied* (Aug. 20, 1987).

We hold, then, that because deliberations on the greater offense were incomplete, the judge's instruction to the jury to continue to deliberate was proper. The decision of the Court of Appeals is affirmed.

UTTER, DOLLIVER, ANDERSEN, and DURHAM, JJ., concur.

DORE, J. (dissenting)—I dissent.

The majority holds that the jury in this case had not completed its deliberations and that therefore the trial judge acted properly in returning the jury to the jury room after its verdict had been handed to him, after he had accepted it and after the bailiff had read it into the record. That holding is self–contradictory. If the jury had not completed its deliberations, its verdict should not have been accepted by the judge and read into the record. If the verdict had been recorded, the jury had completed its deliberations and the trial judge had no right to prevent the rendering of the jury verdict and poll the jury and instruct the jurors further on the necessity of reaching a verdict. In doing so he improperly invaded the jury's function. The jury by finding defendant guilty of the lesser charge, necessarily had rejected guilt of the greater charge. The trial judge should have polled the jury on the lesser charge, not the major charge and if 12 votes were secured, the case would have been terminated and there would have been no need for further polling. In any event, the instruction he delivered improperly influenced the jury.

The majority reasons that this trial judge acted within his discretion in finding that the jury had not deliberated long enough, that it was not deadlocked, and that therefore he could return it to the jury room. That is not what occurred here. The record reflects that the jury returned its verdict, that the trial judge reviewed it and that he then directed the bailiff to read it into the record. Only then did he poll the jury.

If it appeared to the judge that the jury had not deliber-

ated long enough, the time for him to inquire as to the jury's progress by polling was when the jury first returned to the courtroom. Instead, the trial judge polled the jury in an apparent attempt to find a flaw in the verdict which he apparently disagreed with. In doing so he clearly invaded the jury's province, and subjected the defendant to double jeopardy.

The trial judge compounded the error by the manner in which he instructed the jury to deliberate further. While polling the jury, he asked:

THE COURT: . . . Let me ask the foreman. Do you feel there is a reasonable chance that the jury can reach a unanimous verdict?

MR. MILLER: No, not on the greater charge.

THE COURT: You don't feel with additional time the jury would ever be able to reach a unanimous verdict? . . .

MR. MILLER: On the lesser charge, yes, but on the greater charge, no.

Verbatim Report of Proceedings, vol. 3, at 298.

Here, the matter should have ended. Instead, the judge asked the prosecuting attorney his opinion, which was that the jury had not deliberated long enough. The foreman then reiterated that the jury could not reach a unanimous verdict on the greater charge and that the jury's verdict was to convict on the lesser. The trial court refused to accept this.

THE COURT: Right. Well, what I'm saying is he is charged, the greater charge is the charge the State has brought against him.

MR. MILLER: Right.

THE COURT: So your verdict has to be, it has to be unanimous on that particular charge before you even reach the other charges. See, before you can get to those, you have to reach a unanimous verdict one way or the other on the first charge.

Verbatim Report of Proceedings, vol. 3, at 299.

This exchange should not have taken place at all, as I have argued above. Even aside from that error, however, the trial court's comments clearly violate CrR 6.15(f)(2)

which provides:

> After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate.

This court recognized in *State v. Boogaard,* 90 Wn.2d 733, 585 P.2d 789 (1978) that the manner in which a jury is polled can violate this prohibition. What is more, the court held that the issue is whether there is a *possibility* the jury was influenced.

*Boogaard* was decided on a record less complete than this one; the court knew only that the trial court had asked how the voting stood and whether each juror believed a verdict could be reached in half an hour. The court accepted the contention that the trial judge had not intended to influence or pressure the jury. Nevertheless, this court held that the mere *possibility* that the jury had been influenced was sufficient to violate the rule.

> We can accept the lower court's inference that the questioning was not done with an intent to influence the jury. However, we do not agree with its conclusion as to the probable *or possible* effect which the procedure had upon the jury.

(Italics mine.) *Boogaard,* at 736.

Perhaps reasonable people can disagree over whether the exchange quoted above influenced the jurors. But it denies all sense to say that there is *no possibility* that the jurors were influenced.

### Conclusion

The rule against pressuring a jury to reach a result was clearly violated in this case.

I would reinstate the original jury verdict that defendant was guilty of the lesser charge.

Brachtenbach, Callow, and Goodloe, JJ., concur with Dore, J.

Reconsideration denied February 2, 1988.