**FILED**
**APRIL 16, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 35361-3-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| BRANDON WILLIAM CATE, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — At the conclusion of Brandon Cate's first trial for burglary, theft,

and malicious mischief, the trial court declared a mistrial because of a hung jury. A jury

convicted him on all charges after a second trial. On appeal, Cate challenges his

convictions based on double jeopardy grounds. He argues that the trial court prematurely

declared a mistrial at the end of the first trial. Cate also challenges his sentence and two

of his legal financial obligations. We affirm the convictions and the sentence, but vacate

two financial obligations.

FACTS

The State prosecutes Brandon Cate for an entry into Omak's JC Penney's store

and pilfering of jewelry from the store. Sometime late on December 5 or early on

December 6, 2016, someone broke into the JC Penney's store. The burglar shattered the

store's front glass doors and smashed the jewelry department's glass display case. The burglar removed jewelry and scattered jewelry boxes and necklaces throughout the jewelry department.

On December 6, Officer Vernon Reyes of the Omak Police Department learned of the burglary through an activated alarm from inside the JC Penney's store. Officer Reyes went to the store and investigated the crime. Reyes discovered the fingertip to a latex glove inside the jewelry display case and blood within the shattered case. Reyes collected a swab of the blood and sent it to the Washington State Crime Laboratory for testing.

On January 28, 2017, Officer Brian Bowling arrested Brandon Cate based on an unrelated arrest warrant. Officer Bowling questioned Cate about numerous burglaries. Cate confessed that he burglarized the JC Penney's store. Cate explained that he had hoped to gain a quarter of a million dollars from the burglary. Cate disclosed that he prepared for the burglary by taping the ends of gloves to his fingertips. He admitted to using a hammer to break into the store and to smash the jewelry display case. According to Cate, he cut his right hand when taking display boxes. He fled the store and deposited jewelry boxes in a residential area. Bowling did not record Cate's confession.

Officer Brian Bowling searched the residential area identified by Brandon Cate. Bowling recovered abandoned empty jewelry boxes with identifying JC Penney's serial numbers. The boxes contained dried blood drops.

No. 35361-3-III
*State v. Cate*

PROCEDURE

The State of Washington charged Brandon Cate with second degree burglary, second degree theft, and second degree malicious mischief as a result of his entry into the Omak JC Penney's store. By the time of the first trial, the Washington State Crime Laboratory had failed to test the blood taken from the jewelry display case and a mouth swab from Cate.

During the first trial, JC Penney's store manager Tammy Stillwaugh testified to the cost of $1,156 in replacing the shattered front door and the jewelry display case. Stillwaugh also testified that her inventory established a value of approximately $3,000 of missing jewelry, shy of Cate's expectation of $250,000. During trial, Cate denied confessing to the crime and stated he only told Officer Brian Bowling what he knew about the burglary.

On the second day of trial, the jury began deliberations at 10:12 a.m. At 11:40 a.m., the presiding juror sent a note to the trial court, which note asked what would happen if the jury could not unanimously agree on a verdict. We do not know whether the jury continued to deliberate after sending the note. The trial court replied at 11:47 a.m.: "[i]s there a reasonable chance of reaching verdicts if you continue to deliberate for an additional reasonable period of time? Yes or No?" Clerk's Papers at 74. The jury circled "No" and returned the questionnaire to the court.

3

At 12:20 p.m., the trial court reconvened. The court disclosed to counsel the content of the reciprocating notes. The court announced an inclination to declare a mistrial if the presiding juror confirmed that the jury could not reach a verdict. The trial court asked if the State or defense counsel wished to comment on the record. The State's attorney asked when the jury recessed for deliberations. The court answered that the jury had been deliberating for about two hours, that the evidence in the case was not complex, that trial testimony lasted two hours or less, and that the court assessed a likelihood of a difference of opinion precluding the jury from reaching a unanimous verdict. Neither counsel commented further or objected to a mistrial.

The trial court directed the jury to return to the courtroom, where the court explained to the presiding juror that the State charged Brandon Cate with three counts along with a lesser included count. The court asked the presiding juror to opine if a reasonable chance existed of the jury reaching verdicts on any of the counts if it continued deliberating for a reasonable amount of time. The presiding juror replied "no." Report of Proceedings at 189. The court then declared a mistrial.

A second trial commenced months later. The State presented the same testimony, with one exception. By the time of the second trial, the crime laboratory had completed DNA testing of the blood sample taken from the jewelry display case. Forensic scientist William Culnane testified that he compared the DNA profile from Brandon Cate's mouth

4

swab to the DNA profile from the blood recovered inside the JC Penney's store. The two DNA profiles matched. The second jury convicted Brandon Cate of all three charges.

Before the sentencing of Brandon Cate, the State prepared a sentencing memorandum that both the trial court and defense counsel reviewed. The memorandum included a calculation of the offender score. During the sentencing hearing, the State represented to the court that it calculated Cate's offender score by reviewing prior plea agreements, judgment and sentences, and Cate's criminal history from the judicial information system and the National Crime Information Center's (NCIC) system. According to the State, Cate's offender score totaled 16, such that the State recognized a score of 9+.

The State recommended a sentence for Brandon Cate of 68 months' confinement, at the high end of the standard range. Defense counsel asked for a sentence of 51 months' confinement, at the low end of the standard range. The trial court sentenced Cate in the middle of the standard range at 60 months' confinement on the controlling second degree burglary charge and concurrent sentences of 29 months on the other two charges.

The sentencing court imposed legal financial obligations consisting of a $500 victim assessment fee, a $200 criminal filing fee, and a $100 DNA collection fee. The court entered an order of indigency allowing Brandon Cate to appeal at public expense.

LAW AND ANALYSIS

Double Jeopardy

On appeal, Brandon Cate contends the declaration of a mistrial at the conclusion of the first trial violated his constitutional right against double jeopardy. Along these lines, he argues that manifest necessity did not support the mistrial.

Both state and federal constitutions prohibit double jeopardy. U.S. CONST. Amend. V; WASH. CONST. art. I, § 9. This prohibition encompasses holding a second trial following an acquittal. *State v. Jones*, 97 Wn.2d 159, 162, 641 P.2d 708 (1982). When the trial court erroneously declares a mistrial, a defendant may be subject to double jeopardy. *State v. Jones*, 97 Wn.2d at 162.

When "manifest necessity" warrants declaration of a mistrial, a second trial does not violate double jeopardy principles. *State v. Robinson*, 146 Wn. App. 471, 479, 191 P.3d 906 (2008). The word "necessity" with its emphatic connotation could lead to dismissal of all cases based on double jeopardy after a mistrial. Therefore, we do not interpret the "manifest necessity" standard literally. *State v. Strine*, 176 Wn.2d 742, 754, 293 P.3d 1177 (2013). Instead, we afford great deference to a trial court's decision to declare a mistrial when the court considers the jury to be deadlocked. *State v. Strine*, 176 Wn.2d at 754.

A factual basis must exist for the trial court to declare a mistrial based on manifest necessity. *State v. Jones*, 97 Wn.2d at 164 (1982). When assessing a deadlocked jury,

6

the trial court should consider the length of time the jury has deliberated in light of the

length of the trial and the volume and complexity of the evidence. *State v. Jones*, 97

Wn.2d at 164. The court may also consider other relevant factors. *State v. Jones*, 97

Wn.2d at 164.

The Washington Supreme Court, in *State v. Strine*, cited a United States Supreme

Court decision for guidance in adjudging manifest necessity for purposes of a mistrial

because of a deadlocked jury:

> We have also explicitly held that a trial judge declaring a mistrial is
> not required to make explicit findings of 'manifest necessity' nor to
> 'articulate on the record all the factors which informed the deliberate
> exercise of his discretion.' And we have never required a trial judge, before
> declaring a mistrial based on jury deadlock, to force the jury to deliberate
> for a minimum period of time, to question the jurors individually, to consult
> with (or obtain the consent of) either the prosecutor or defense counsel, to
> issue a supplemental jury instruction, or to consider any other means of
> breaking the impasse. In 1981, then-Justice Rehnquist noted that *this Court
> had never 'overturned a trial court's declaration of a mistrial after a jury
> was unable to reach a verdict on the ground that the manifest necessity
> standard had not been met*.'

*Renico v. Lett*, 559 U.S. 766, 775, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010) (internal

citations omitted) (emphasis added); *State v. Strine*, 176 Wn.2d at 755.

Brandon Cate cites *State v. Taylor*, 109 Wn.2d 438, 443, 745 P.2d 510 (1987) for

the proposition that:

> The jury's own assessment that it is deadlocked, while helpful, is not
> itself sufficient ground[s] for declaring a mistrial.

Our Supreme Court may have contradicted itself, however, because it earlier wrote:

> Obviously, if the jury, through its foreman and of its own accord, acknowledges that it is hopelessly deadlocked, there would be a factual basis for discharge if the other jurors agree with the foreman.

*State v. Jones*, 97 Wn.2d at 164 (1982). *Taylor* does not purport to overrule *Jones*.

Regardless of whether or not the trial court may rely on the jury's own appraisal of a deadlock, sufficient reasons existed for Brandon Cate's first trial court to declare a mistrial. The trial court did not rely solely on the jury's statement. Although the trial court need not have articulated reasons, the court observed that the jury had deliberated for two hours, the evidence in the case was not complex, and testimony took two hours or less. Based on these factors, the trial court independently concluded the jury would remain deadlocked. Neither counsel objected. The trial court reasonably exercised its discretion when finding manifest necessity for a mistrial.

Offender Score

Brandon Cate next contends that the evidence does not support the trial court's assignment of a 9+ offender score, because the State failed to prove his earlier convictions. We disagree.

In order for a prior conviction to be included in an offender score calculation, the State must prove that the conviction occurred by a preponderance of the evidence. *State v. Hunley*, 175 Wn.2d 901, 909-10, 287 P.3d 584 (2012). Bare assertions, unsupported by evidence, do not satisfy the State's burden. *State v. Hunley*, 175 Wn.2d at 910. While the preponderance of the evidence standard is not overly difficult to meet, the State must

introduce at least some evidence to support the claimed criminal history. *State v. Hunley*, 175 Wn.2d at 910. In determining the proper offender score, the court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. *State v. Hunley*, 175 Wn.2d at 909.

The State presented, in its briefing and during the sentencing hearing, evidence of previous judgment and sentences as well as information from the NCIC system to obtain Brandon Cate's criminal history. The State provided a cause number and details of two recent cases, in which Cate had been sentenced seven weeks prior to the sentencing for the instant case. Defense counsel did not challenge this information.

Brandon Cate acknowledged much of his criminal history during his testimony at trial. On cross-examination, the State questioned Cate regarding convictions from May 8, 2015, May 6, 2016, April 11, 2017, and April 12, 2017. Cate answered affirmatively that he was convicted of various crimes from each of those time frames.

At sentencing, defense counsel asked for a sentence consistent with an offender score of 9+. Even, appellate counsel does not argue that the score was wrongly calculated.

## Legal Financial Obligations

Brandon Cate filed a motion asking that we strike the DNA fee and the criminal filing fee from his judgment and sentence. Based on Cate's indigency, we grant this

9

No. 35361-3-III
*State v. Cate*

request pursuant to amended RCW 36.18.020(2)(h) and *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018).

## CONCLUSION

We affirm Brandon Cate's convictions for burglary, theft, and malicious mischief. We affirm Cate's sentence. We remand for the sentencing court to strike the DNA fee and criminal filing fee. Cate need not appear at any hearing scheduled to strike the two legal financial obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Korsmo, J.

Siddoway, J.

10