

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 36000-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JEREMY SHANE TRACY, | ) | |
| | ) | |
| Appellant. | ) | |

FEARING, J. — Appellant Jeremy Tracy challenges his convictions for rape of a child on the basis of the trial court's permitting of the jury to break for lunch during deliberations and the trial court's questioning of the jury about a potential deadlock. We hold that the trial court committed no error and affirm the convictions. We, however, remand to the sentencing court to strike two legal financial obligations.

FACTS

We narrate scant facts because the underlying facts leading to Jeremy Tracy's conviction of two counts of rape of a child in the first degree lack relevance to the appeal. Kelli Bullock and Jeremy Tracy began dating in January 2008. In 2010, the two moved from Wyoming to Washington with Bullock's seven-year-old daughter Debbie, a

pseudonym, and the couple's two-year-old son. From May 2010 through February 2011, the family lived in picturesque Maryhill.

In February 2011, Debbie disclosed to her mother that weeks earlier Jeremy Tracy, in the bathroom of the family's residence, rubbed her unclothed genitals with his fingers. On April 18, 2011, Tracy pled guilty to child molestation in the second degree and thereafter served a prison sentence. Meanwhile, Kelli Bullock moved from Washington State with Debbie and her son.

In September 2016, after Debbie saw a counselor, she alleged other instances of sexual abuse by Jeremy Tracy. Kelli Bullock informed the Klickitat County Sheriff's Office of the additional disclosures.

PROCEDURE

The State of Washington charged Jeremy Tracy with two counts of rape of a child in the first degree. The case proceeded to a jury trial.

During trial, fourteen-year-old Debbie testified about two incidents. Debbie averred that Jeremy Tracy removed her from a bunkbed in the middle of the night, laid her down, and inserted his penis into her vagina. On another occasion when her mother went to Wyoming for the mother's father's funeral, Tracy carried Debbie down a hallway to the master bedroom. Tracy removed Debbie's clothes and positioned her on the bed. Tracy discarded his pants and had Debbie perform oral sex on him.

2

Kelli Bullock testified during trial. Bullock confirmed that she purchased a bunkbed in June of 2010. Bullock verified that her father died in August 2010 and that she then spent three weeks in Wyoming for the funeral. Jeremy Tracy testified at trial and denied both accusations.

The jury began deliberations one day at 10:45 a.m. and returned a verdict at 4:03 p.m. the same day. During the course of the jury's deliberations, the trial court twice brought the jury into the courtroom before the parties. At 12:15 p.m., the trial court answered two jury questions. After answering the questions, the court allowed the jury to separate for lunch. No party requested that the jury be sequestered during deliberations or lunch. Before excusing the jury, the court instructed the jurors:

> [THE COURT:] We are now at 12:20 and you've been deliberating for a number of—a little over an hour and a half in this matter. I am going to go ahead and excuse you for the lunch hour at this point in time. So, again, I'll have you back here in one hour to continue on with your deliberations. While you are away from here, you are not to discuss this matter. You're not to go ahead and do any other research.
> All of those earlier warnings about not doing research, not to discuss this case, not to talk to anybody coming either to or from the jury room apply again until you all are back here. Once all twelve of you are back here I'll bring you back in here, it's just a mere formality; but I need to bring you in and then release you to begin—continue with your deliberations.
> So, I am going to go ahead and excuse you at this time until 1:20 or so when everybody's back and then I will release you to go continue with your deliberations. So, you're excused at this time for your lunch hour.

Report of Proceedings (RP) at 414.

3

No. 36000-8-III
*State v. Tracy*

At 1:22 p.m., the jury returned to the courtroom, and the court directed them to resume deliberations. At 2:22 p.m., the jury sent a message advising the court of a deadlock. The trial court assembled the parties and remarked outside the presence of the jury:

> THE COURT: Alright. We're back on the record in the matter of State of Washington versus Jeremy Tracy. . . . We received another question from the jurors. I'm going to read that and then get some input from the parties on how to respond.
> What should we do when we are unable to agree unanimously. We have jurors who will not change their vote and claim nothing we can do/say will alter that belief? Signed: Presiding Juror. Dated today.

RP at 416-17.

The trial court thereafter brought the jury into the courtroom. The court cautioned members of the jury that no juror should utter any remark that may adversely affect the rights of either party or may disclose an opinion about the case. The judge then engaged in the following exchange with the presiding juror:

> THE COURT: I am going to ask the presiding juror if there's a reasonable probability of the jury reaching a verdict within a reasonable period of time. The presiding juror must restrict his answer—his or her answer to yes or no when I ask this question and must not say anything else.
> Okay. If I could just have the presiding juror please rise. Presiding juror, is there a reasonable probability of the jury reaching a verdict within a reasonable time as to any of these counts—as to all counts?
> [PRESIDING JUROR]: No.
> THE COURT: Is there a reasonable probability of the jury reaching a verdict within a reasonable time as to any one count?
> [PRESIDING JUROR]: No, Your Honor.

RP at 425.

4

Without objection from either party, the trial court individually asked each juror the same two questions as asked the presiding juror. Three jurors answered that the jury might still reach a verdict. The trial court directed the jury to continue deliberations. Before dismissing the jury for further deliberations, the court stated:

> THE COURT: Alright. Alright. Ladies and gentlemen, at this point in time I am going to go ahead and excuse you back to the back room for a bit longer to continue with your deliberations at this point in time. I appreciate the input at this point in time; but I am going to go ahead and excuse you into the back room for further deliberations.

RP at 429. The jury further deliberated from 2:35 p.m. to 4:03 p.m., when they returned with guilty verdicts on both counts.

In Jeremy Tracy's judgment and sentence, the trial court included a provision for community custody. The court entered the following condition during community custody: "[n]ot frequent playground, parks, schools, or and [sic] location where children are known to congregate." Clerk's Papers (CP) at 240. The sentencing court also imposed a $200 filing fee and a $100 DNA fee. The trial court allowed Tracy to appeal at public expense.

LAW AND ANALYSIS

On appeal, Jeremy Tracy challenges his convictions and his sentence. He asks that we reverse his convictions because the trial court allowed the jury, in the midst of deliberations, to exit the courthouse for lunch and because the trial court directed the jury to continue with deliberations after asking if the jurors could reach a verdict. He

challenges the community custody condition that prohibits access to areas where children

congregate, and he also challenges some legal financial obligations.

Lunch

Jeremy Tracy contends that the trial court violated RCW 4.44.300 and CrR 6.7(b)

when permitting a deliberating jury to separate and go to lunch. He further contends the

error denied him of a fair trial under the Fourteenth Amendment to the United States

Constitution and our Washington Constitution art. I, §§ 3 and 22. In so arguing, Tracy

relies on *State v. Smalls*, 99 Wn.2d 755, 665 P.2d 384 (1983).

In *State v. Smalls*, the Supreme Court construed CrR 6.7. The rule then declared

that the "jury may be allowed to separate if the court finds that good reasons exists to

believe that such would not jeopardize a fair trial." *State v. Smalls*, 99 Wn.2d at 759.

The court held that CrR 6.7 precluded separation of the jury after commencement of

deliberations. The high court also held that RCW 4.44.300 prohibits separation of the

jurors during deliberations. A violation of RCW 4.44.300 raises a presumption of

prejudice to the accused. The court worried of the myriad of influences on a juror that

could prejudice a juror if a juror returns home overnight.

*State v. Smalls* lacks relevance because the court applied former versions of CrR

6.7 and RCW 4.44.300. CrR 6.7(a) now reads:

> **Generally**. During trial and deliberations the jury may be allowed
> to separate unless good cause is shown, on the record, for sequestration of
> the jury.

6

The Supreme Court, in *State v. Smalls*, interpreted an older version of

RCW 4.44.300. In 2003, the legislature significantly modified RCW 4.44.300. LAWS OF

2003, ch. 406, § 17. The prior version of RCW 4.44.300, cited to in *Smalls*, read:

> After hearing the charge, the jury may either decide in the jury box or retire for deliberation. If they retire, they must be kept together in a room provided for them, or some other convenient place under the charge of one or more officers, until they agree upon their verdict, or are discharged by the court. The officer shall, to the best of his ability, keep the jury thus separate from other persons, without drink, except water, and without food, except [as] ordered by the court. He must not suffer any communication to be made to them, nor make any himself, unless by order of the court, except to ask them if they have agreed upon their verdict, and he shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed on.

The updated version of RCW 4.44.300, effective July 27, 2003, provides that:

> During deliberations, the jury may be allowed to separate *unless good cause is shown*, on the record, for sequestration of the jury. Unless the members of a deliberating jury are allowed to separate, they must be kept together in a room provided for them, or some other convenient place under the charge of one or more officers, until they agree upon their verdict, or are discharged by the court. The officer shall, to the best of his or her ability, keep the jury separate from other persons. The officer shall not allow any communication to be made to them, nor make any himself or herself, unless by order of the court, except to ask them if they have agreed upon their verdict, and the officer shall not, before the verdict is rendered, communicate to any person the state of their deliberations or the verdict agreed on.

(Emphasis added). CrR 6.7(a) and RCW 4.44.300 now authorize separation of a jury for

lunch or for other reasons unless a party shows good cause for sequestration.

Jeremy Tracy attempts to modify CrR 6.7 and RCW 4.44.300 further when

contending that his trial court breached the court rule and statute by failing to inquire, on

7

the record, whether good cause for denying separation of the deliberating jury existed.

Contrary to Tracy's misreading of the rule and statute, sequestration is not the default

dictate. Instead both rule and statute permit separation unless a party shows good cause

for sequestration. Neither the State nor Jeremy Tracy challenged separation, let alone

showed good cause for continued sequestration.

Jeremy Tracy cites no authority for his contention that the separation of the jury

for the noon meal violated his constitutional rights to a fair trial. This court does not

review errors alleged but not argued, briefed, or supported without citation to authority.

RAP 10.3; *Valente v. Bailey*, 74 Wn.2d 857, 858, 447 P.2d 589 (1968); *Meeks v. Meeks*,

61 Wn.2d 697, 698, 379 P.2d 982 (1963); *Avellaneda v. State*, 167 Wn. App. 474, 485

n.5, 273 P.3d 477 (2012).

## Jury Poll

Jeremy Tracy contends that the trial court compromised fairness of his trial when

the court directed the jury to continue deliberating after most jurors responded to his

polling by declaring the jury deadlocked. Tracy claims the polling imposed unnecessary

pressure on the three jurors, who dissented from declaring a deadlock, to reach a verdict.

We wonder if the three disagreeing jurors would more likely place pressure on other

jurors to reach a verdict rather than experiencing pressure themselves. Tracy also asserts

that the trial court failed to comply with the pattern jury instruction recommended to be

given to jurors during an inquiry into a potential deadlock.

The State contests whether Jeremy Tracy preserved this assignment of error for appeal since both the prosecuting attorney and defense counsel agreed to the trial court polling the jury. Generally, appellate courts will not consider an issue raised for the first time on appeal. RAP 2.5(a); *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). An exception exists for manifest errors affecting a constitutional right. RAP 2.5(a)(3). The constitutional right to a fair and impartial jury demands that a judge not bring to bear coercive pressure upon the deliberations of a criminal trial. *State v. Boogaard*, 90 Wn.2d 733, 736-37, 585 P.2d 789 (1978). Therefore, this court will review for the first time on appeal, as an issue of constitutional magnitude, a claim of judicial coercion affecting a jury verdict. *State v. Ford*, 171 Wn.2d 185, 188, 250 P.3d 97 (2011). Thus, we reach the merits of Jeremy Tracy's assignment of error.

The right to a fair and impartial jury trial requires that a judge refrain from coercive pressure on the jury's deliberations. *State v. Jones*, 97 Wn.2d 159, 164, 641 P.2d 708 (1982); *State v. Boogaard*, 90 Wn.2d at 736-37. A court rule incorporates this principle. CrR 6.15(f)(2) declares:

> After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate.

WPIC 4.70 suggests language for the trial court to employ when the jury returns to the courtroom during deliberations either because the jury has indicated that it may be deadlocked or the judge contemplates the possible discharge of the jury because of a

deadlock. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.70 note on use at 151 (4th ed. 2016) (WPIC). According to the instruction, the trial court should ask the presiding juror to answer "yes" or "no" whether there is a reasonable probability of the jury reaching a verdict within a reasonable time. The court may ask the question of each juror. WPIC 4.70.

A trial judge holds broad discretion in determining whether to declare a mistrial. *State v. Barnes*, 85 Wn. App. 638, 656, 932 P.2d 669 (1997). A belief that the jury is deadlocked is the classic basis for declaring a mistrial. *State v. Barnes*, 85 Wn. App. at 656. When assessing a deadlock, the judge may consider the length of jury deliberations relative to the length of the trial and the complexity of issues and evidence. *State v. Barnes*, 85 Wn. App. at 656. The law affords no particular procedures to follow when determining the probability of the jury coming to a verdict. *State v. Boogaard*, 90 Wn.2d at 738. The trial judge may make certain limited inquiries of the jury as to the progress of the deliberations. *State v. Boogaard*, 90 Wn.2d at 739. After ascertaining where the jury stands numerically as to a deadlock, the judge may better determine whether further deliberations might resolve the deadlock. *State v. Jones*, 97 Wn.2d 159, 164 (1982). The trial court must not ask the jury as to votes or opinions as to guilt or innocence. *State v. Jones*, 97 Wn.2d 159, 164.

To prove a violation of the right to a fair trial, Jeremy Tracy must establish a reasonable substantial possibility that the trial court's intervention improperly influenced the jury. *State v. Watkins*, 99 Wn.2d 166, 178, 660 P.2d 1117 (1983). The accused must affirmatively show improper influence and not rely on speculation. *State v. Watkins*, 99 Wn.2d at 178.

Jeremy Tracy forwards *State v. Boogaard*, 90 Wn.2d 733 (1978) when asserting that the trial court's questioning of the jurors invaded the jury deliberations. In *Boogaard*, the jury's deliberations began in midafternoon and continued into the evening. At 9:30 p.m., the trial court sent the bailiff to inquire how the jury stood numerically on a vote, but not to ask what number of jurors voted which way. The bailiff reported that the vote was ten to two. The court then summoned the jury to the courtroom to determine its status in reaching a verdict. The trial court asked the foreman to relate the history of the votes and whether he thought the jury could reach a verdict in half an hour. The foreman bespoke confidence that the jury could reach a verdict within a half hour. The trial court then asked each juror whether he or she believed a verdict could be reached in thirty minutes. All but one answered in the affirmative. The court instructed the jury to continue its deliberations for half an hour. Thirty minutes later, the jury reached a verdict of guilty.

In *State v. Boogaard*, the Supreme Court reversed the conviction. The court reasoned that the trial court's questioning of the individual jurors "tended to and most probably did influence the minority jurors to vote with the majority." *State v. Boogaard*, 90 Wn.2d at 740. The court emphasized:

> The questioning of individual jurors, with respect to each juror's opinion regarding the jury's ability to reach a verdict in a prescribed length of time, after the court was apprised of the history of the vote in the presence of the jurors, unavoidably tended to suggest to minority jurors that they should "give in" for the sake of that goal which the judge obviously deemed desirable—namely, a verdict within a half hour.

*State v. Boogaard*, 90 Wn.2d at 736. The court further reasoned that two jurors' changing of their votes within the prescribed half hour and joining the majority's verdict of guilt justified an inference that the changes of opinion resulted not from a change of view of the evidence but from a response to a consideration of the trial judge's wishes.

After two and a half hours of deliberation, Jeremy Tracy's jury sent a note to the judge advising of a deadlock. The hour of day remained young. The trial judge returned the jury back to the courtroom and, pursuant to WPIC 4.70, polled the presiding juror and each individual juror. Three jurors believed the jury could reach a verdict, and nine disagreed. The judge asked the jury to continue its deliberations. Unlike the judge in *Boogaard*, Tracy's trial court did not ask the jurors as to the likelihood of reaching a verdict within a prescribed time window. The court merely stated, "I am going to go ahead and excuse you back to the back room for a bit longer to continue with your

deliberations at this point in time." RP at 429. The jury then continued deliberations from 2:35 p.m. to 4:03 p.m. The jury did not return a verdict for one and a half hours following the judge's individual questioning, unlike in *Boogaard*, when the jury returned a verdict within the trial court's prescribed period of continued deliberations.

We conclude that Jeremy Tracy fails to affirmatively show any undue influence on the jury's verdict. The trial court read the pattern jury instructions almost verbatim. The trial court polled the jury only on each juror's opinion on the benefits of continued deliberations. The court did not ask for a numerical count of any vote. The court never told the jury that it needed to reach a verdict by a deadline or that the court would end deliberations within a set period of time. Conceivably the jury could return fifteen minutes later with all jurors convinced of a deadlock. The facts raise no inference that the questioning of jurors influenced any minority jurors to vote with the majority.

Legal Financial Obligations

Pursuant to *State v. Ramirez*, 191 Wn.2d 732, 426 P.3d 714 (2018), Jeremy Tracy requests this court to strike the imposed $200 criminal filing fee and $100 DNA collection fee due to his indigence. Tracy notes that the State collected his DNA in connection with his 2011 conviction for child molestation.

Because of Jeremy Tracy's indigency, we agree the two financial obligations should be struck. The State concedes the need to erase the obligations.

13

Community Custody Condition

Jeremy Tracy contests, on vagueness grounds, the constitutionality of the language in community custody condition 19. The condition bars Tracy from "playground, parks, schools, or *and* [sic] location where children are known to congregate." CP at 240. We assume the word "any" should replace the word "and" in the language.

The State agrees that condition 19 should be struck, but we decline the State's concession because of the Washington Supreme Court's recent decision in *State v. Wallmuller*, __ Wn.2d __, 449 P.3d 619 (2019). In *Wallmuller*, the high court held that language in a community custody condition prohibiting the offender's presence "in places where children congregate" passes a constitutional vagueness challenge.

Statement of Additional Grounds for Review (SAG)

Pursuant to RAP 10.10, Jeremy Tracy filed a SAG that raises two additional arguments. First, Tracy claims that the trial court allowed juror five to use a cell phone during voir dire and that the juror could have researched the pending case or Tracy's name. The record does not confirm Tracy's speculation of research.

The record reads that juror five, during voir dire, informed the court that a prior business commitment interfered in his jury service. The juror noted that he lacked his phone in the courtroom. The trial court instructed juror five to phone his business during a break to arrange for someone else to handle a delivery scheduled the next day. Immediately before the break, the court directed juror five to leave the courtroom with

14

the bailiff to place the call. After the phone call, juror five announced that he could serve because a friend would fulfill the delivery.

Although RAP 10.10 does not require appellant to refer to the record or cite authority, he must enlighten this court of the "nature and occurrence of alleged errors." Jeremy Tracy merely speculates that juror five could have Googled Tracy's name during the brief recess. Nevertheless, Tracy mentions no negative consequences of the potential juror's cell phone use. Also Tracy does not cite case law that prohibits potential jurors from making telephone calls during voir dire. When separated, a juror may communicate with others, by phone or otherwise, so long as he or she does not discuss the case. *State v. Kell*, 101 Wn. App. 619, 622, 5 P.3d 47 (2000). Presumably, this rule also applies to potential jurors during voir dire. In addition, the trial judge directed the bailiff to accompany the juror.

In his SAG, Jeremy Tracy also argues that his trial attorney performed deficiently because counsel never listened to his objections or questions regarding a hung jury. A defendant alleging ineffective assistance of counsel must establish both that his counsel's performance was deficient and that the deficiency prejudiced him. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009). Tracy does not specify how his counsel's alleged failure to listen to his objections prejudiced him.

15

No. 36000-8-III
*State v. Tracy*

CONCLUSION

We affirm Jeremy Tracy's conviction. We remand to the sentencing court to strike the criminal filing fee and DNA collection obligations.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Korsmo, J.

_____
Siddoway, J.

16